## STATE OF OREGON,
*Respondent,*

*v.*

## SHANE ARTHUR MORGAN,
*Appellant.*

## (J84-0709; J84-0939; CA A37453)

724 P2d 334

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals from his convictions for attempted kidnapping in the first degree, ORS 163.235 and ORS 161.405, attempted use of a dangerous weapon, ORS 166.220, and menacing. ORS 163.190. He assigns error to the admission of evidence of a prior crime, the trial court's denial of his motion to suppress evidence of the victim's on-the-scene identification and to his sentence as a dangerous offender under ORS 161.725.

On the evening of March 13, 1984, the victim was entering her car at the Roseburg Valley Mall. As she was closing her car door, a man approached and told her to "move over." She said, "No," and the man brandished a hunting knife with a four to six inch blade and again told her to move over. He apparently thrust the knife into the car between the door and the jamb. The victim grabbed his wrist and again said, "No." They wrestled for a while over the knife and, as the man tried to pull away, she let go of his wrist and slammed the door shut and locked it. The victim testified that the man's face was two to three feet from hers and was lit by a pole lamp in the parking lot and by her car's interior light and that this encounter lasted about one minute.

The man ran away, and the victim chased him with her car, honking her horn and hoping to attract attention. She noticed a police car in the parking lot and stopped. The police had been summoned to investigate a report of a strange man hanging around the mall. The victim told Officer McGrew what had happened and described the man. McGrew broadcast the man's description on his radio, and the victim entered the police car to help the police search for her attacker. Meanwhile, Officer Hoffman had stopped defendant in his car in another part of the parking lot, in response to some bystanders' alerting Hoffman to a suspicious person they had seen fleeing from the mall. As Hoffman left his car, he saw defendant place his hands above his head, and he ordered him to keep his hands up and to remain in his car.

Hoffman announced on his radio that he had a possible suspect. After some other officers arrived, defendant was removed from his car and handcuffed. McGrew arrived on the scene with the victim within two minutes. The victim positively identified him as the man who had attacked her,

saying, "That's him but he changed hats." Defendant was wearing a baseball cap when Hoffman stopped him, and the victim had said that he had been wearing a red, white and blue knit cap. A knit ski mask with those colors was found in defendant's vehicle.

Defendant moved before trial to suppress evidence of his conviction in Washington for rape. That conviction stemmed from an incident on March 19, 1977, in which defendant approached a woman who was alone in a truck in a mall parking lot, pulled a gun, forced her to move over, drove the car to an isolated location and forced her to take off her clothes and perform an oral sex act. Defendant confessed to that crime, pled guilty to rape in the first degree and was sentenced to a 35 year prison term. He was on parole when he committed this offense. Defendant argues that evidence of that crime was inadmissible under OEC 404(3) and 403. The trial court denied the motion, ruling that the evidence was relevant to the issues of identity and intent and that its probative value outweighed its prejudicial impact. Defendant assigns that ruling as error.

OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

As we stated in *State v. Johns,* 76 Or App 448, 455, 709 P2d 1121 (1985), *rev allowed* 300 Or 562 (1986):

"* * * The first step in reviewing the admissibility of evidence of a prior act is to determine if it is relevant for a noncharacter purpose which is genuinely in issue in the case. Even relevant evidence may be excluded pursuant to OEC 403:

" 'Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence.'

"* * * The relevance of evidence of a prior act to prove

intent to commit the crime charged derives from the similarity of the two acts so that the jury may reasonably infer from proof of the prior act that the defendant intentionally committed the charged act. * * *"

■ Defendant's intent as to what he planned to do with the victim if she moved over and let him in the car was in issue in this case. In order to prove the attempted kidnapping charge, the state had to show, *inter alia,* that he intended to take the victim from one place to another, without her consent and with the purpose of causing her physical injury. We think that evidence of defendant's prior crime is probative of his intent in this case, because the circumstances of the two assaults are so similar. In both cases, defendant approached a woman who was alone in a vehicle in a mall parking lot in the evening, brandished a weapon and told the victim to move over. Because the circumstances of the two acts are similar, a jury could reasonably infer that, in this case, defendant intended to drive the victim to another location and sexually assault her. *State v. Fleischman,* 10 Or App 22, 495 P2d 277, *rev den* (1972). In several cases involving OEC 404(3) we have held that the evidence of a prior act or crime was not relevant to prove intent to do the crime charged, because the prior act was factually dissimilar. *See, e.g., State v. McDonald,* 77 Or App 267, 272, 712 P2d 163 (1986); *State v. Johns, supra; State v. Parks,* 71 Or App 630, 634, 693 P2d 657 (1985). The prior crime in this case is similar to the crime charged, and evidence of that crime is relevant to show defendant's criminal intent.[1]

■ The next step is to determine if the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice." OEC 403. The similarity of the two incidents and the temporal remoteness of the prior act bear on its probativeness. *State v. Johns, supra,* 76 Or App at 458. In this case, the two incidents are similar. Although the prior act occurred seven years before the one charged in this case, defendant was in prison for more than six of those years. We conclude that the trial court did not abuse its discretion in ruling that the evidence was admissible under OEC 404(3) and 403. *State v. Madison,* 290 Or 573, 579-80, 624 P2d 599 (1981).

Defendant next assigns error to the admission of the

---

[1] Because we reach this conclusion, we need not decide if the evidence was admissible to show defendant's identity.

victim's on-the-scene identification. The victim also identified him in court, and he does not argue that the in-court identification was tainted by the prior identification. He does argue that the process of identification was so suggestive as to give rise to a substantial likelihood of misidentification in violation of the Fourteenth Amendment's guarantee of due process. Defendant points to the facts that he was handcuffed and in the presence of police officers when the victim identified him and that the victim may have been told that she was going to be given an opportunity to identify a suspect who had just been detained.

*State v. Classen,* 285 Or 221, 232, 590 P2d 1198 (1979), sets forth a two-part test to determine if an out-of-court identification is admissible.

> "* * * First, the court must determine whether the process leading to the offered identification was suggestive or needlessly departed from procedures prescribed to avoid such suggestiveness. If so, then the prosecution must satisfy the court that 'the proffered identification has a source independent of the suggestive confrontation' or photographic display * * * or that other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggestive procedure." (Footnote and citation omitted.)

*Classen* identified several factors which are relevant to the second determination.

> "* * * These include the opportunity that the witness had at the time to get a clear view of the persons involved in the crime and the attention he or she gave to their identifying features, the timing and completeness of the description given by the witness after the event, the certainty expressed by the witness in that description and in making the subsequent identification, and, of course, the lapse of time between the original observation and the subsequent identification. * * *" 285 Or at 232-33.

■ This court has held in several cases that on-the-scene confrontations between victims and suspects are acceptable means of identification. *See, e.g., State v. Scott,* 68 Or App 386, 681 P2d 1188, *rev den* 297 Or 547 (1984); *State v. Davie,* 56 Or App 507, 642 P2d 680, *rev den* 293 Or 146 (1982); *State v. Ponce,* 54 Or App 581, 635 P2d 1042 (1981), *rev den* 292 Or 568 (1982); *State v. Robertson,* 42 Or App 471, 600 P2d 935 (1979).

In most of those cases we held that the identification procedure was unduly suggestive but that the circumstances indicated that the identification was nonetheless reliable. Assuming that the procedure was suggestive in this case, we conclude that the victim's identification was reliable and admissible. She had a good opportunity to observe him during their struggle and gave an accurate description to McGrew immediately after the incident. Finally, she made the identification within minutes of the attack and expressed with unwavering certainty her opinion that he was the man who assaulted her.

■   Defendant finally argues that the trial court erred in sentencing him as a dangerous offender under ORS 161.725. He does not claim that the trial court failed to follow the procedure specified in ORS 161.735, but only that the trial court's conclusion is not supported by the record. Pursuant to ORS 161.735, the trial court obtained two psychiatric evaluations before imposing sentence. One psychiatrist concluded that defendant was suffering from a severe personality disorder that indicated a propensity toward criminal activity. That conclusion, coupled with the trial court's finding that an extended period of confinement is necessary to protect the public in the light of defendant's criminal history, is sufficient to support sentencing him as a dangerous offender, because he committed a Class A felony. ORS 161.725(1). The fact that a second psychiatrist concluded that defendant does not suffer from a severe personality disorder does not diminish the value of the first psychiatrist's conclusion as a basis for the trial court's sentence.

Affirmed.