Argued and submitted April 14, affirmed December 31, 1986, reconsideration denied March 13, petition for review denied April 28, 1987 (303 Or 332)

# STATE OF OREGON,
*Appellant,*

*v.*

# CALLETANO ARCE,
*Respondent.*

(153,170, CA A35400)

730 P2d 1260

Kendall M. Barnes, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

David A. Hilgemann, Salem, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

Van Hoomissen, J., dissenting.

## WARDEN, P. J.

The state appeals from a pretrial order suppressing evidence seized in the execution of a search warrant. We affirm.

In October, 1984, officers of the Marion County Sheriff's Office and the City of Woodburn Police Department searched a residence in Gervais, pursuant to a search warrant issued by the district court. Heroin and cocaine were seized, and defendant was arrested and charged with possession of both controlled substances.[1]

The principal basis for the search warrant was a "controlled buy" of cocaine by a police informant. The informant told officers that, when he was inside the residence making the "buy," he had seen a person who was known to him as Ruben Guajardo. Officer Olson stated in his affidavit for the search warrant that he had discovered that there was an arrest warrant for Guajardo for escape in the second degree. Olson also stated that he had personal knowledge that Guajardo had assaulted police officers in the past and had resisted arrest.

The warrant was executed at 8:30 a.m. by nine police officers. Some officers were in uniform; others were in plain clothes. Without warning, they simultaneously kicked open the front and rear doors of the residence and entered with drawn weapons. As they entered, they shouted in Spanish and English that they were police and that they were authorized to search the house. At the time of entry, all of the residents were asleep. The police kicked open several bedroom doors and held the occupants at gunpoint. The occupants testified that they had no idea what the commotion in the house was until the officers forcibly entered their bedrooms and ordered them to "freeze." Defendant and the other adult occupants were handcuffed and led to the kitchen area where the warrant was read to them and defendant was arrested. Defendant successfully challenged the warrant on the basis of the failure of the executing police officers to announce their identity, authority

---

[1] Defendant was one of three persons arrested as a result of the search. All three joined in a consolidated suppression hearing, and the records of the other two defendants' cases were included in the record for this appeal.

and purpose before entering the premises.[2]

 In *State v. Tweed,* 62 Or App 711, 715, 663 P2d 38 (1983), we stated:

> "The 'knock-and-announce' rule has roots in the Fourth Amendment, *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963), and is codified in ORS 133.575(2) (with respect to search warrants) * * *. It requires that officers executing a warrant identify themselves and state their authority and purpose prior to entering the premises." (Footnotes omitted.)

The constitutional knock-and-announce requirement need not be met when the executing officers reasonably believe that doing so would lead to the destruction of evidence, permit the escape of persons within the premises or increase the risk of harm to the officers or others. *State v. Miller,* 43 Or App 421, 425, 602 P2d 1141 (1979).[3]

---

[2] As a threshold issue, the state argues that the police substantially complied with the knock-and-announce requirements by announcing their identity and purpose simultaneously with their entry. However, the trial court specifically found that the police did not give notice of their identity, authority and purpose to the persons in apparent control of the premises until after they had entered. There is substantial evidence in the record to support that finding, and we are bound by it.

[3] There is also a *statutory* knock-and-announce rule. ORS 133.575(2) provides:

> "The executing officer *shall,* before entering the premises, give appropriate notice of the identity, authority and purpose of the officer to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be." (Emphasis supplied.)

The statute is unambiguous on its face and states no exceptions. In *State v. Bishop,* 288 Or 349, 352, 605 P2d 642 (1980), the Supreme Court held that officers who did not announce their purpose before entering to make an arrest thereby violated ORS 133.235(5) and (6), which impose substantially identical requirements. We think it clear that the Supreme Court would reach the same result concerning ORS 133.575(2). Failure to knock and announce is thus illegal. Unlike ORS 133.140(7), which allows a judge to authorize an arresting officer to enter premises without giving notice of the officer's authority and purpose, there is no statute allowing a magistrate to waive those requirements for a search. A magistrate may not authorize the police—or anyone else—to perform an illegal act, and the purported authorization in this warrant for a "no-knock" entry was necessarily void.

In the light of the clarity of the statute and of the Supreme Court's holding in *State v. Bishop, supra,* we see no need to follow the dissent into the labyrinth of legislative history. It is clear that the legislature failed to enact a provision providing *exceptions to the rule.* Previous common law rules, whatever they were, cannot create exceptions to a clear statute. The most that the dissent shows is that some legislators believed that the courts should insert what the legislature had omitted. We cannot do that. ORS 174.010.

The courts of this state have frequently been asked to consider the constitutional knock-and-announce requirement and its exceptions, *see State v. Bishop, supra* n 3, and cases cited therein, but this case is unusual in that the issuing magistrate provided, on the face of the warrant, that the police were

> "authorized to use the degree of force as is reasonably necessary for the execution of this warrant with all practicable safety, *including not giving notice of identity, authority or purpose in entering the premises.*" (Emphasis supplied.)

Defendant argues that the issuing magistrate was without authority to authorize a no-knock entry on the basis of exigent circumstances described in the supporting affidavit; he argues that such a decision is solely the responsibility of the police officers at the scene. The judge at the suppression hearing agreed and suppressed the fruits of the search.

■ The problem is more basic than defendant suggests. A magistrate has no authority to abrogate the required procedures for executing a warrant; "knock-and-announce" is one of those procedures. *See* n 3, *supra.* The limited exceptions to the *constitutional* knock-and-announce requirement are based on the circumstances as they exist at the time when a warrant is *executed,* and they necessarily involve a violation of Oregon statutory law. A magistrate cannot validly authorize a statutory violation.

■ ■ Although the police violated the statute, that violation does not require suppression in this case.[4] We therefore turn to whether there was a constitutional violation. That question depends on whether, at the time when the warrant was executed, the officers had a reasonable belief that exigent circumstances then existed. Exigent circumstances exist when the executing officers reasonably believe that announcement

---

[4] As with an arrest, we believe that a violation of the *statutory* knock-and-announce rule requires suppression of the evidence thereby discovered only if the violation was aggravated. *See State v. Bishop, supra,* 288 Or at 352-353. "This does not mean that the statute need not be obeyed, but means only that the evidence is not suppressed." 288 Or at 353. The violation in this case was not aggravated because the police reasonably, although incorrectly, believed that they had valid judicial authorization for the "no-knock" entry. In this case, the evidence can be suppressed only if there was a constitutional violation. The critical disagreement between us and the dissent is whether there was a constitutional violation. The dissent would hold that exigent circumstances justified the police action; we do not.

could lead to the destruction of evidence, result in an escape or increase the danger to the officers or others. *State v. Miller, supra,* 43 Or App at 425. The trial court found that

> "failure to make an announcement prior to entry was not justified by any belief that evidence would be destroyed or that the object of the search would escape."

However, the trial court did not discuss the "danger to officers and others" exception.

 The state argues that the escape charge against Guajardo and his history of assault and resisting arrest were sufficient to justify the police in entering without "knocking and announcing," irrespective of the authorization in the warrant. The state made the same argument to the trial court, but that court granted defendant's motion to suppress without making a finding on that issue. If findings are not made on all fact issues, and there is evidence from which they could be decided more than one way, we will presume that the fact issues were decided consistently with the trial court's ultimate conclusion. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). Because the trial court concluded that the evidence must be suppressed, we will presume that it found that the known pending charge against Guajardo and of his criminal history was insufficient to show that he represented a danger to the police or to others that constituted exigent circumstances.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

I would reverse the pretrial order suppressing evidence. Therefore, I respectfully dissent.

The trial court found:

"1. Gregory Olson of the Marion County Sheriff's office applied for and was granted a search warrant to search a residence in Gervais, Oregon for controlled substances and the body of an alleged escapee.

"2. The warrant was served the same day it was obtained. The warrant was served at approximately 8:30 AM.

"3. Officers did not give notice of their identity, authority and purpose to the persons in apparent control of the premises searched until after they had entered the premises.

"4. The search warrant was endorsed on its face by the issuing magistrate with the following statement:

" 'You are further authorized to use that degree of force as is reasonably necessary for the execution of this warrant with all practicable safety, including not giving notice of identity, authority or purpose in entering the premises.' "

The court concluded:

"1. No statutory authority exists for a magistrate to issue a warrant which purports to authorize execution without prior announcement of the officer's identity, authority and purpose.

"2. Because no authority exists, the officers' failure to make an announcement prior to their entry was unlawful.

"3. The failure to make an announcement prior to entry was not justified by any belief that evidence would be destroyed or that the object of the search would escape.

"4. Because the entry violated ORS 133.575(2), the evidence obtained in that search must be suppressed."[1]

At the outset, it is useful to identify a source of confusion in the record. There is a discrepancy between what the trial court stated orally after the evidentiary hearing and what it put in its subsequent written order. At the hearing, the court focused its attention on whether officer Olson's affidavit was sufficient to support a no-knock entry. The court did not then express any doubt about whether a no-knock entry could be authorized by the issuing magistrate. Indeed, it is implicit in the court's remarks that it assumed a magistrate had such power. The court stated:

"In the ten years I have been on the bench, I have issued two no-knock warrants * * *."

However, the court's subsequent written order focuses on whether the magistrate had statutory authority to authorize a no-knock entry, regardless of the sufficiency of any affidavit

---

[1] After of the evidentiary hearing, the court made an additional oral conclusion of law that was not included in its written order:

"I'm finding that it did not justify a no-knock search warrant and in accordance with the case of *Kerr* [sic] *v. California,* 374 U.S. 23 - a 1963 case - *State v. Miller,* 43 Or App 421, (1979), that I am firmly convinced that the failure to knock and announce requirement, it is applicable and it would have been applicable here, renders ensuing search and seizure unreasonable and therefore is in violation of the Fourth Amendment of the Constitution of the United States."

accompanying the application for a search warrant. The court concluded that no such statutory authority exists. Regrettably, the court stopped there; it utterly failed to address the state's *alternative* arguments that, notwithstanding, the executing officers had substantially complied with the requirements of ORS 133.575(2) and that, even if they had not complied, the exigencies of the moment allowed a no-knock entry. Further, at the hearing, the court focused its attention on a knock-and-announce violation of *constitutional* proportions. However, the court's subsequent written order mentions only a *statutory* violation. This confusion in the record persuades me that the trial court's analysis, which to some extent has been followed by the majority in this court, is flawed.

The first question is whether a magistrate may authorize a no-knock entry in a search warrant. The majority concludes that the magistrate could not have authorized the no-knock entry because such an entry would violate the statute and a magistrate cannot validly authorize a statutory violation. 83 Or App at 190.[2] I disagree.

Oregon statutes neither expressly permit nor prohibit such authorization. The legislative history shows that the legislature considered the issue now before us. The initial draft of Senate Bill 80 in 1973 included a section dealing with exceptions to the knock-and-announce requirements:

> "If the executing officer reasonably believes that the notice required by subsection (2) of this section would lead to the destruction of evidence, result in the escape of a suspect or increase the peril to the officer's safety or the safety of other persons, the officer may execute the warrant without prior notice."

James Hennings, Director of the Metropolitan Public Defenders Office, informed the Senate Judiciary Committee that his office was opposed to letting police officers decide on the scene whether or not they should knock and announce before entering the premises. *Minutes, Senate Committee on the*

---

[2] The majority refuses to look beyond the statute itself. The majority also relies on *State v. Bishop,* 288 Or 349, 605 P2d 642 (1980). 83 Or App at 189 n 3. However, *Bishop* dealt with ORS 133.235, the statute on arrest warrants, not ORS 133.575, the statute on search warrants. If we look outside this statute to other statutes and caselaw for support, surely we can look to the statute's own legislative history.

*Judiciary,* February 7, 1973, at 6. The committee was then asked to consider an amendment that would require a judge to decide the "no-knock" question. The committee was referred to a New York statute that required the issuing magistrate to make an independent determination of whether or not it would be necessary to enter the premises without knocking and announcing. The motion to amend the bill to conform to the New York statute failed.

The committee was then asked to consider an amendment limited to those situations only when the officer's concern was that evidence would be destroyed and leaving the decision whether to knock and announce to the officer's discretion when the issue was the officer's safety. That motion also failed. *Minutes, Senate Committee on the Judiciary,* March 14, 1973, at 10. However, the bill was later amended to provide that a no-knock entry could be made only when the magistrate had so endorsed the warrant or when there was danger to the life of the officer or others. *Minutes, Senate Committee on the Judiciary,* March 23, 1973, at 8.

When the bill was considered by the House, there was concern about those limitations on no-knock entries. *See Minutes, House Committee on the Judiciary,* May 24, 1973, at 3. A motion to restore the knock-and-announce section to the form in which it had been originally introduced failed. *Minutes, House Committee on the Judiciary,* May 24, 1973, at 3. A second motion to adopt the Senate version with an amendment adding an escape clause to provide that if the officer, after presenting all the information to the magistrate, obtained some fresh information which would lead him to believe that there was going to be an escape or destruction of the evidence, he could disregard the knock-and-announce requirements, also failed. *Minutes, House Committee on the Judiciary,* May 28, 1973, at 5.

The Conference Committee received a letter from the Oregon District Attorneys Association that provided, in part:

"While I [Phil Roberts] cannot guarantee that these comments reflect the views of all Oregon District Attorneys, I am fairly confident that the following modifications to SB80 would be acceptable to the majority of them:

"Knock and announce: delete any statutory reference to

any exceptions to the knock and announce rule (ie, return to existing law as far as statutory language is concerned)."

The Conference Committee then discussed deleting the knock-and-announce requirements:

"LEE JOHNSON, Attorney General, stated that the Attorney General's office would not object to deletion of the knock and announce question. * * *

"* * * * *

"MS. REMINGTON [Executive Director of the ACLU] stated that she had seen the [District Attorneys Association] memo and agreed with it.

"SENATOR BROWNE stated that the three planks that deal with eliminating from the statute on the no-knock provisions, (1) in either the warrant or warrantless arrest, (2) under search and seizure, and (3) permitting the arrest on probable cause for a Class A misdemeanor, leaving Article 8 in tact. [*Sic*]

"REPRESENTATIVE COLE stated they needed to reinstate the statutes [*Former* ORS 141.110(4)[3] (search warrants); and *former* ORS 133.290(4)[4] (arrest warrants)] dealing with knock and announce.

"DON PAILLETTE said the requirements of knocking and announcing are reinstated in the bill anyway. *There are no statutory exceptions to knock and announce, just case law.*

"REPRESENTATIVE HAMPTON said to make it clear so that there would be no ambiguity to delete the repealers of the three existing sections and take all reference to knock and announce out so there would not be any misunderstanding.

"PAILLETTE said if you delete the repealers you would have to unnecessarily rewrite the bill with respect to what an officer does when he makes an arrest and when he executes a search warrant.

---

[3] *Former* ORS 141.110 provided:

"In the execution or service of a search warrant, the officer has the same power and authority, in all respects, to break open any door or window, to use all necessary and proper means to overcome any forcible resistance made to him or to call any other person to his aid that he has in the execution or service of a warrant of arrest."

[4] *Former* ORS 133.290 provided:

"The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

"REPRESENTATIVE HAMPTON *asked if it would be Paillettes [sic] intent or the intent of the legislature that the existing body of case law be applied to the newly restated knock and announce requirements, in SB 80 as though we had not repealed the existing sections.*

"PAILLETTE said *he thought so.*

"REPRESENTATIVE HAMPTON said he thought they should make a specific finding to that effect in the Conference Committee report if they go that route so that if that question arises on statutory construction there won't be a lot of thrashing around one way or another.

"PAILLETTE stated *there is no substantive difference between SB 80 and the existing statutes with respect to what is required of an officer in a knocking and announcing situation.*

"REPRESENTATIVE HAMPTON stated he is willing to live with what is in the bill and go ahead with the repealers of the three existing statutes but he would like to have the Conference Committee Report make a notation that that is their intent.

"* * * * *

"SENATOR EIVERS said he would feel more comfortable if they took out the repealers but as long as they go the way Representative Hampton suggests, *it is very clear they are retaining the existing provisions and case law, etc.*

"PAILLETTE asked that they turn to subsection (3) in the engrossed re-engrossed bill, page 28, and subsection (5). Subsection (5) would have to be amended to take out the exception. That would be deleted. It would read, 'The arresting officer shall give appropriate notice of his identity, authority, and purpose to the person to be arrested or to the person in the apparent control of the premises'.

"REPRESENTATIVE HAMPTON stated he felt that was adequate as long as the Conference Committee Report contained a brief notation that they did not intend to change existing law.

"* * * * *

"LEE JOHNSON said he didn't feel the statement of legislative intent is necessary, he felt there were other ways to handle it.

"REPRESENTATIVE HAMPTON stated that his concern is that there would be *something in writing* for the Supreme

Court to refer to, somewhere in the records, *so that the claim cannot be made that the legislature, in this instance, intended by restating the law to rule out the potential for statutory exception, for case law exceptions.* He asked if they could assure him that the DA's would totally accept without any question and would not give the legislature a hard time when the Court of Appeals threw out the thing. He just wants it to be on the record and not in thin air.

"PAILLETTE felt that the original language in the commentary would take care of that. He said there was commentary in Article 4 under the arrest provisions and also under search and seizure with respect to the sections on how arrest is made by an officer and also how a search warrant is executed by an officer.

"PAILLETTE stated that the Court has consistently referred to the Interim Report on the Criminal Code, 1971, with respect to construing the statutory provisions.

"* * * * *

"REPRESENTATIVE HAMPTON stated if they left the existing statutes on the books there would be no question that the legislature intended the existing statutes to be subject to the case law.

"SENATOR EIVERS said they were repealing them.

"REPRESENTATIVE HAMPTON stated that was his whole point. He said they were subject to the case law exceptions. *There is no question but that they are subject to the case law exceptions.* If they repeal those statutes and come back and restate in a different way, I don't want somone coming and arguing that the legislature intended it this time because they repealed those statutes and this time they stated no exceptions, they meant that there be no exceptions. If there is no concern, if the DA's are totally convinced, I will give it due consideration." *Conference Committee Minutes, Senate Committee on Judiciary,* June 23, 1973, at 1. (Emphasis supplied.)

The legislative history shows that the exceptions to the knock-and-announce requirements of the former statutes, which existed in case law, were intended to apply to the new statute. The case law regarding the exceptions is found in *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 984 (1973); *State v. Brothers,* 12 Or App 435, 507 P2d 398 (1973); *State v. Newman,* 12 Or App 266, 506 P2d 523 (1973); *State v. Larkins,* 8 Or App 162, 493 P2d 172 (1972); *State v. Vance,* 7 Or App 566, 492 P2d 493 (1972); *State v.*

*Gassner,* 6 Or App 452, 488 P2d 822 (1971); *State v. Mitchell et al,* 6 Or App 378, 487 P2d 1156, *rev den* (1971). Those cases recognized that police officers need not knock and announce before entering premises when they reasonably believe that doing so would result in the destruction of evidence, increase the risk to the officers' safety or the safety of others or result in the escape of persons on the premises. *See State v. Newman, supra,* 12 Or App at 270. We have continued to recognize that exigent circumstances may justify entry without complying with the knock-and-announce requirements even after the present statute was enacted. *See State v. Miller,* 43 Or App 421, 602 P2d 1141 (1979). Thus, it is clear that a magistrate's authorization of a no-knock entry would not amount to authorization of a statutory violation.

Further, Oregon law favors judicial intervention. *See United State v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Ingram,* 251 Or 324, 445 P2d 503 (1968). Placing a neutral magistrate in the warrant process is intended to curb police excesses and to protect the very interests which defendant here claims were violated. Allowing a magistrate who issues a search warrant to decide whether the circumstances justify a no-knock entry is fully in accord with that policy. It is irrational that the law would encourage the police to get a warrant to search a home but preclude them from seeking judicial approval of a no-knock entry of that same home, regardless of the information available to them at the time they sought the search warrant about any conditions and circumstances that might justify a no-knock entry. Considering the heightened intrusiveness of a no-knock entry, common sense dictates that the law should encourage police to obtain, when practicable, prior judicial approval of any no-knock entry.

The majority's holding results in an absurd anamoly: A police officer executing a search warrant may be able to make a decision whether to knock and announce, but the magistrate who issued that warrant is powerless to determine before-the-fact whether the officer had a factual basis to make a no-knock entry. That simply makes no sense.[5]

---

[5] It is instructive to observe that, in spite of a legislative policy that, when possible, a search warrant should be served in the daylight hours and within five days of its issuance, ORS 133.565(3) provides that a magistrate who issues a search warrant may

It is clear from the legislative history that there was no legislative intent to prohibit magistrates from issuing no-knock search warrants and that the *only* question was whether there was sufficient reason to *require* predetermination by a magistrate. It is a *non sequitur* to argue that a decision *not to require preauthorization* shows legislative intent *to prohibit predetermination.*[6]

To conclude from the fact that the search warrant statute is silent[7] on the no-knock entry question that a magistrate may not authorize a no-knock entry requires an additional inductive step: Are Oregon courts limited to putting only those provisions in orders that are expressly authorized by statute? Obviously not. Many examples exist of provisions routinely found in judicial orders that lack any express statutory authorization. The majority has cited no authority that requires express statutory authorization for every provision in a judicial order. Lacking such authority, there is no legal or logical basis for the majority's conclusion that statutory silence means a magistrate may not authorize a no-knock entry.[8]

Assuming that a magistrate may endorse a search warrant to permit a no-knock entry, I next proceed to examine

---

authorize its execution at night and after five, but not more than 10 days, from the date of its issuance. Considering that the legislature has given magistrates power to issue search warrants and to endorse them for nighttime and delayed execution, is it reasonable to conclude that the legislature intended to deny magistrates power to authorize no-knock entry in a search warrant? If that was the legislature's intent, why did it permit magistrates to authorize no-knock execution of *arrest* warrants? Nothing in the legislative history of the two statutes indicates that the legislature intended to treat search warrants differently from arrest warrants. More importantly, the Commission's commentary clearly shows that that was *not* the intent of the legislature. Thus, the conclusion is inescapable—the legislature intended to treat arrest warrants and search warrants alike. The difference in the statutory language does not mandate a different conclusion. Because a different conclusion is irrational, we should reject it.

[6] The majority states that we cannot insert what the legislature has omitted. 83 Or App at 189 n 3. We need not insert anything new, we are merely asked to maintain the common law as it existed at the time the statute was enacted. The common law remains the law of this state unless it has been changed by legislative action. *State v. Blacker,* 234 Or 131, 136, 380 P2d 789 (1963). The statute does not address the common law exceptions and, therefore, it did not change those exceptions.

[7] It is clear that a magistrate may preauthorize a no-knock entry of premises to serve an *arrest* warrant. ORS 133.140(7). I see no principled reason to treat *search* warrants differently from *arrest* warrants.

[8] It is interesting to note that defendant argues that the magistrate does not have the authority to do exactly what the Public Defender's Office wanted magistrates to be required to do.

the affidavit in this case. Defendant in this appeal (and the other two defendants who joined in the suppression hearing) failed to file a supplementary motion and affidavit to controvert the good faith, accuracy and truthfulness of the affiant with respect to the evidence presented in the affidavit. ORS 133.693(2), provides, in relevant part:

> "If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority *only* upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness." (Emphasis supplied.)

Because defendant failed to file a motion to controvert, I would not consider his arguments going to the degree of accuracy and truthfulness of the affiant, which are based on testimony elicited at the suppression hearing. *See State v. Liberman,* 51 Or App 345, 350, 625 P2d 678 (1981). I conclude that the affidavit is sufficient to support the magistrate's endorsement.

Even if a magistrate lacks authority to authorize a no-knock entry, that does not end the inquiry. I would still hold that the entry here was lawful. First, the executing officers substantially complied with the requirements of ORS 133.575(2). They announced their identity, authority and purpose simultaneously with entry through the outer doors. They repeatedly announced their identity and purpose as they opened the interior doors. Three of the persons arrested testified that they had been asleep and that they did not hear any police announcements of identity, authority and purpose before the officers entered the bedrooms in which they were sleeping. Therefore, it would be hypertechnical to think that a pre-entry announcement seconds before would have made any real difference. In *State v. Newman, supra,* 12 Or App at 270, we said that the method of making an announcement, when it is required, can vary with the circumstances the officers encounter.[9]

---

[9] In *Newman* the executing officers encountered a front door with a sign, "day sleeper." Before they announced their identity and purpose, they opened the door. We found that that was sufficient compliance with the knock-and-announce requirement:

"When a residence is occupied by somebody who is asleep, an announcement

Second, the entry also was lawful, because the facts here fit into one or more of the three recognized exceptions to the knock-and-announce requirement, thus excusing any unannounced entry.[10] The trial court did not even address the exception regarding increased risk of harm to the officers or others. *See State v. Larkin, supra,* 8 Or App at 163-64. Further, the trial court's conclusion that

> "the failure to make an announcement prior to entry was not justified by any belief that evidence would be destroyed or that the object of the search would escape,"

is not supported by evidence in the record and, therefore, we are not bound by it. *Ball v. Gladden,* 250 Or 485, 487-88, 443 P2d 621 (1968).

At the suppression hearing, the officers testified that they entered the house "without knocking and announcing their identification before they broke the door" for their own safety and that of the people inside, because they knew that Guajardo, for whom a felony escape warrant had been issued and who previously had been arrested for assault on police officers, was inside and they "didn't want to lose him," and because the occupants of the house "can flush the dope in no time." The officers also testified that they understood that persons associated with the premises owned guns. That understanding proved to be correct, for various guns were found during the course of the search.

The search warrant here authorized a search for and seizure of heroin, cocaine and Guajardo. Olson's affidavit reads, in relevant part:

---

made by the police in such a way that is most likely to be heard is the best way to minimize the danger of violence and to protect rights of privacy." 12 Or App at 271.

The same reasoning is applicable here. The officers were executing a warrant at 8:30 a.m. It was certainly possible, as the residents of the premises searched testified later, that the occupants were asleep at that hour. Just as in *Newman,* the announcement made here, simultaneously with entry, was more likely to be heard than pre-entry announcement. That conclusion is confirmed by the testimony of the occupants of the premises who testified that they did not even hear the announcements the officers made as they entered. Consequently, any pre-entry announcements here would likely have been meaningless and, therefore, the failure to pre-announce could not possibly have prejudiced defendant.

[10] As shown by the legislative history above, the legislature intended that those exceptions continue to apply.

"That I ran a check through the Law Enforcement Data Systems and National Crime Information Center and found an arrest warrant exists for Ruben Guajardo for escape in the second degree. That I called the Oregon State Correctional Institution and confirmed a warrant of arrest existed for Ruben Guajardo for Escape in the Second Degree. A check of Department of Motor Vehicles Records shows that the residence address of Ruben Guajardo is 340 First Street, Gervais, Oregon.

"* * * * *

"That I have personal knowledge that Ruben Guajardo has assaulted police officers in the past and resisted arrest. This information is verified by a computerized criminal history check that shows prior arrests for Assault in the Fourth Degree and Resisting Arrest."

I conclude from those averments that the executing officers reasonably believed that Guajardo presented a potential threat to their safety and that, under the totality of the circumstances, a sudden, unannounced entry would reduce the risk of harm to themselves as well as to the persons inside the house and that a prior announcement of identity, authority and purpose could have had the opposite effect. I also conclude that the officers reasonably believed that Guajardo might escape and that the evidence might be destroyed. Therefore, a no-knock entry was permissible.

Finally, even if there was a statutory violation, that alone does not require suppression of the evidence. Evidence should not be excluded unless the circumstances surrounding the violation are particularly aggravated or there is a constitutional violation. *See State v. Bishop,* 288 Or 349, 352-55, 605 P2d 642 (1980); *State v. Valentine/Darroch, supra,* 264 Or at 68-69.

I agree with the majority that any statutory violation was not aggravated, because the police officers believed that they had obtained judicial authorization for the no-knock entry. 83 Or App at 189 n 3. The officers believed that knocking and announcing might result in an increase in danger, both to themselves and to those inside the house, in the escape of Guajardo and in the destruction of the controlled substances. The trial court concluded that the failure to announce was not justified by the belief that the evidence would be destroyed or that Guajardo would escape. However,

as stated above, the trial court made no findings regarding the officers' belief that announcing their entry would increase the risk to their safety. The circumstances known to the officers, Guajardo's history of escape, resisting arrest and assault, justified their belief in the increased risk to their safety by knocking and announcing.