Argued and submitted July 24, 1991; resubmitted In Banc June 3, affirmed
August 12, 1992, reconsideration denied January 13, petition for review
pending 1993

## STATE OF OREGON,
*Appellant,*

*v.*

## DENNIS BOST,
*Respondent.*

(89-3565-C-3; CA A63879 (Control))

## STATE OF OREGON,
*Appellant,*

*v.*

## GLEN BOST,
*Respondent.*

(89-3564-C-3; CA A64175)
(Cases Consolidated)

837 P2d 536

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for appellant in each case. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Steven Humber, Deputy Public Defender, Salem, argued the cause for respondent in each case. With him on the brief was Sally L. Avera, Public Defender, Salem.

BUTTLER, J.

Richardson, J., dissenting.

**BUTTLER, J.**

Defendants are brothers. Glen was indicted for manufacture of a controlled substance, and Dennis was charged with manufacture and possession of controlled substances. The cases were consolidated in the trial court and on appeal. The trial court granted both defendants' motions to suppress evidence seized pursuant to a search warrant on the ground that the executing officers violated ORS 133.575(2):

> "The executing officer shall, before entering the premises, give appropriate notice of the identity, authority and purpose of the officer to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be."

The state appeals, and we affirm.

Police officers from the State Police, Jackson County Sheriff's Office, Federal Department of Drug Enforcement and JACNET went to the premises described in the warrant to execute a search warrant for drugs. The premises consisted of a main residence occupied by Glen and his mother, Roletta. Behind the main residence was a travel trailer with a connected room that was occupied as a residence by Dennis.

Although there is some conflict in the evidence, we take the facts that are consistent with the trial court's findings and conclusions. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). The dissent refuses to do that and views the evidence in the light most favorable to the state. The officers arrived at the premises at about 8:00 a.m. Three police officers ran onto the porch of the main house, from where they were able to see Glen and his mother sitting at the kitchen table eating breakfast and talking. The two looked at the police. The police announced their identity and that they had a search warrant. Roletta testified that she got up and moved to the door to open it and that she had her hand on the doorknob as the police kicked the door in, breaking her thumb. One officer testified that he saw Glen and his mother get up, but he felt "it was taking a considerable period of time." Another officer testified that they parked 7 to 10 feet from the front door and ran to the door and started smashing it in within 15 or 30 seconds.

There was evidence concerning the entry into Dennis' residence that one officer looked into the trailer and "realized that it could be a residence." He did not testify that he was apprehensive about entering. A female friend of Dennis' was asleep in the trailer when she heard the police announce their presence and purpose. According to her, it was no longer than 2 seconds later that the police burst into the trailer, where Dennis was asleep.

The trial court made these findings:

"3) At the time the officers arrived at the premises to execute the search warrant they announced their presence as 'officers with a search warrant' at the front door of the main residence, but did not allow any adequate time in which the occupants of the residence, specifically GLEN BOST and his mother, Roletta Bost, could respond to the front door. The officers kicked in the front door before either GLEN BOST or Roletta Bost could open it for them.

"4) Prior to the entry of the main residence the officers saw no activity within the premises indicating an effort by the occupants to dispose of evidence[;] rather, they observed the occupants inside and the occupants, so far as the officers could tell, were not doing any specific thing.

"5) The residence of DENNIS BOST was similarly entered by the officers who announced their presence and who kicked open the door without allowing any sufficient time in which the occupants could respond. At the time the officers announced their presence and purpose they were not aware whether anyone was or was not inside the residence, but were aware only that the travel trailer and attached building was furnished and appeared as though it could be a residence of some person.

"6) The Court finds nothing in the evidence to suggest that the officers were concerned regarding their safety; that evidence was being destroyed; or any other reason to kick in the doors of the two residences."

It concluded that the evidence, including statements made by Dennis, "should all be suppressed for the reason that the forced entry of both residences was an aggravated violation of the 'knock and announce' requirements of the law."

■■ The Oregon Supreme Court has recognized that one purpose of the knock and announce rule is to protect householders' right to privacy; the "appropriate" announcement

lets the occupants know who desires to enter, why he desires to enter and allows a few seconds to prepare for his entry. *State v. Valentine/Darroch*, 264 Or 54, 60, 504 P2d 84 (1972), *cert den* 412 US 948 (1973). That privacy interest has been recognized most recently in *State v. Ford*, 310 Or 623, 631, 801 P2d 754 (1990). The appropriateness of the notice in terms of allowing the occupants time to respond to the announcement is a question of fact and depends on the circumstances. Here, the trial court found that the notice was not "appropriate," because the officers did not allow adequate time for defendants to respond. The evidence supports that finding, and we are bound by it. *Ball v. Gladden, supra.*

■　　There are, of course, exceptions to the rule, as pointed out in *State v. Ford, supra*, in which the court held that

> "compliance with the 'knock and announce' requirements of ORS 133.235(6) is excused if specific and articulable facts known at the time of entry, taken together with rational inferences that may be drawn from those facts, would lead a reasonable person to believe that compliance would create a risk to the entering officers' safety." 310 Or at 637.

The burden is on the state to prove by a preponderance of the evidence that the police were justified in departing from the statutory notice requirements before breaking down a door of a defendant's residence. *State v. Ford, supra*, 310 Or at 638. Here, the trial court found "nothing in the evidence to suggest that the officers were concerned regarding their safety; that evidence was being destroyed; or any other reason to kick in the doors of the two residences." That finding is also supported by the evidence.

■　　The apparent rationale of the dissent is that the "knock and announce" rule is satisfied so long as the police announce their identity, authority and purpose, regardless of whether they wait for the occupants to respond and regardless of whether they articulate specific facts known at the time of entry to lead them, as reasonable persons, to believe that waiting would create a risk to entering officers' safety. In other words, the police may simply announce and then break down the door. We disagree. Although there is a separate "knock and announce" statute relating to arrests, ORS 133.235(5) and (6), the statutes are treated as imposing the

same requirements. *See State v. Ford, supra.* ORS 133.235(6) provides:

> "If after giving notice of the officer's identity, authority and purpose, the officer is not admitted, the officer may enter the premises, and by a breaking, if necessary."

If the officers may only break in if necessary, after making their announcement, something more than announcing is required. ORS 133.575(2) provides that requirement—that the announcement must give "appropriate notice," that is, allow a reasonable time for the occupants to let them in, in the absence of an exception to the requirement. Here, the trial court found that the evidence did not support any exception.

The dissent's reliance on *State v. Arce*, 83 Or App 185, 730 P2d 1260 (1986), *rev den* 303 Or 332 (1987), is puzzling. The state had appealed the suppression of evidence obtained in a search of the defendant's residence. The police did not comply with the "knock and announce" statute, because the warrant excused that requirement. We held that the magistrate did not have authority to excuse the statutory mandate, but that that violation alone did not require suppression. However, we affirmed the suppression, because there was evidence from which the trial court could have found the evidence insufficient to support the state's burden to prove that the police reasonably believed that the defendant's criminal history represented a danger to them or others.

■     Here, too, the trial court's findings are supported by the evidence, and its findings support its conclusion that there was a violation of the statute and that, as in *Arce*, the state had failed to sustain its burden to justify the violation. Those findings and conclusions support its conclusion that the violation was an aggravated one. Given those findings and conclusions, the forced entry violated defendants' rights under the Fourth Amendment. *See Ker v. California*, 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963).

Affirmed.

**RICHARDSON, J.,** dissenting.

The majority analyzes the order of suppression on three bases and concludes that it was correct. I disagree with

much of the analysis and the summary conclusion, and I dissent.

It first bears stating that the evidence which was suppressed was seized by authority of a warrant to search for and seize methamphetamines. The trial court held that the warrant was valid. The evidence seized and the statements of the defendants were suppressed, because the court found a violation of ORS 133.575(2). The violation was that the officers, after banging on the side of the mobile home and stating that they were police officers with a search warrant, did not give the residents "sufficient time" to open the door.

It also bears stating that the shorthand term commonly applied to the problem — "knock and announce" — is not what the statute says. ORS 133.575(2) provides:

> "The executing officer [of a search warrant] shall, before entering the premises, give appropriate notice of the identity, authority and purpose of the officer to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be."

Whether the conduct of the executing officer is an "appropriate notice" is a question of law. The historic facts are of course binding on us, if there is evidence to support them. *State v. Ford*, 310 Or 623, 801 P2d 754 (1990). Whether the historic facts show a violation of the statute and whether they show a particularly aggravating violation are questions of law. Whether the facts support an objectively reasonable basis for excusing compliance with the statute is also a question of law. The majority, with the citation of *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), paints the trial court's mixture of facts and conclusions as being all findings that we may not review. It essentially ends its analysis there.

The majority recites some of the evidence, as well as the court's findings, because it concludes that the evidence is consistent with the trial court's conclusion. It is difficult to tell from the trial court's oral recitation and its written order what evidence it accepted and how it may have resolved the conflicts. It is oversimplified to say that, because of its ruling, the court necessarily accepted the defendants' evidence and rejected the state's. In any event, the selective fact recitation by the majority gives an incomplete picture of what occurred.

Officers from several different law enforcement agencies went to defendants' residence to execute a search warrant for drugs. The principal residence was a mobile home. On its front side was a deck, a sliding glass door and a picture window. The officers arrived about 8 a.m. and drove in several vehicles down a long driveway leading to the residence. There was a least one marked patrol car in the entourage, and it stopped in front of the home's picture window. The officer who drove that car was in uniform.

Defendants' mother testified that she saw the cars come down the driveway about five minutes before the officers kicked in the door. She said that, when the officers' cars stopped, she got up from where she was sitting and started toward the front door but, before she could open it, it was kicked in and her thumb was injured. The trial court made no particular finding about whether she had tried to open the door or whether she had been injured. However, in its oral recitation the court said:

> "Factually, I'm going to find the people simply looked and stared at the police officers and their response was to freeze."

It is doubtful that the court accepted defendants' mother's statement that she had tried to open the door and was injured while doing that.

Three officers got out of their cars and approached the front door. One of them banged on the metal side of the mobile home and shouted that they were police officers with a search warrant. About 15 to 30 seconds after the officers got out of their cars, they kicked in the door.

While the three officers were at the front door, another went around to the back of the home. He looked in a window of the shack where Dennis resided and saw that it appeared to be a living quarters. He testified that he shouted for assistance from another officer, knocked on the door and yelled that they were police with a search warrant. He said that, about 30 seconds later, he forced open the door and found Dennis in bed. Dennis' female companion testified that she was awakened by someone shouting and that, no more than two seconds after she heard the officer, he broke in the door. The court's findings do not separately address the entry of Dennis' residence.

The trial court, after finding that the officers had announced their presence as "officers executing a search warrant," concluded that they had violated the statute, because they did not allow the occupants adequate time to open the door.

The majority's analysis is:

"The appropriateness of the notice in terms of allowing the occupants time to respond to the announcement is a question of fact and depends on the circumstances. Here, the trial court found that the notice was not 'appropriate,' because officers did not allow adequate time for defendants to respond." 114 Or App at 523.

The law, as the majority sees it, is:

"ORS 133.575(2) provides * * * that the announcement must give 'appropriate notice,' that is, allow a reasonable time for the occupants to let them in, in the absence of an exception to the requirement." 114 Or App at 524.

The trial court, the defendants and the majority do not cite any cases to support that construction of the statute. The majority does cite one authority and implicitly relies on another. The authority cited is ORS 133.235, which relates to arrests:

"(5) In order to make an arrest, a peace officer may enter premises in which the officer has probable cause to believe the person to be arrested to be present.

"(6) If after giving notice of the officer's identity, authority and purpose, the officer is not admitted, the officer may enter the premises, and by a breaking, if necessary."

The majority concludes from these sections:

"If the officers may only break in if necessary, after making their announcement, something more than announcing is required." 114 Or App 524.

The difficulty is that ORS 133.575(2), relating to execution of search warrants, does not contain the language that the majority extracts from ORS 133.235(6). Even if the language was omitted from ORS 133.575(2), only because of a legislative oversight, we are not privileged to cure the oversight by amending it judicially. It is just as likely that the legislature consciously omitted the requirement in the arrest statute when drafting the one regarding search warrants.

The statute regarding execution of search warrants simply does not contain the language that supports the requirement that the majority postulates. The "finding" of the trial court is no more relevant than a finding that the occupants were not given sufficient time to call an attorney.

The authority that the majority implicitly follows, but does not cite, is Emily Post. It may follow, as common courtesy or a nicety of social interaction that, after knocking, the officers wait for an invitation or begin negotiations with the occupants before executing a search warrant. It does not follow as a statutory requirement.

Several cases have put a common law gloss on the statute, usually by discussing the purposes of the announcement requirement. In *State v. Ford, supra,* the court said that the reason for the announcement rule was to protect persons who might be injured by violent resistance to unannounced entries, which, of course, would include protection of the officers executing a warrant as well as the occupants of the building. It is also designed to protect the interests of householders in the privacy of their dwellings. The privacy right of the occupants is, in essence, the right to be warned that their privacy is about to be *legally* invaded. *State v. Bishop,* 288 Or 349, 605 P2d 642 (1980). The search warrant authorizes the police to invade the privacy of the home and with force, if necessary.

Although waiting a sufficient length of time for an occupant to open the door may be *a* method of accomplishing some of the purposes of the rule, there is no such requirement stated or implicit in the statute or in its common law parentage. What is required is an appropriate notice that the occupant's privacy is about to be lawfully invaded. The occupants of the mobile home here had visual and verbal notice of that.

*State v. Stalbert,* 99 Or App 582, 783 P2d 1005 (1989), is essentially indistinguishable. There, several officers went to the defendant's residence to execute a search warrant; two officers went to the front door and two went to the back. One officer knocked on the front door and "yelled" twice, "Police officers, search warrant." After no more than two seconds, they broke the front window and the door and

entered. The trial court had found that there "was no opportunity for the occupants of the premises to open the door," but it upheld the search. We affirmed the trial court's conclusion that ORS 133.575(2) was not violated. We noted that, as required by the statute, the officers gave notice of their identity, authority and purpose before entering. All that the statute required was a few seconds to prepare for entry. *See State v. Valentine/Darroch*, 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973). The majority does not cite *Stalbert*.

Even if the majority's gloss on the statute were accepted, I would still conclude that there was no violation. An exception to the statute's requirements, even as interpreted by the majority, is that the officers had a reasonable apprehension that the evidence sought could be destroyed and quick action was necessary. *See State v. Ford, supra*. The majority quotes the trial court's findings:

> "The court finds nothing in the evidence to suggest that the officers were concerned regarding their safety; that evidence was being destroyed; or any other reason to kick in the doors of the two residences." 114 Or App at 522.

However, the trial court, in its oral discussion, said:

> "[A]ll competent lawyers in this State are aware of the usual reasons given for rapid action, the fact that evidence can easily be placed beyond reach, flushed down the toilet. There is no question about it. It can be disposed of in an instant. It can be swallowed."

The trial court's conclusion was apparently premised on its finding that, when the officers approached, the people visible in the house did nothing and, consequently, there was no indication that anyone was going to get a weapon or destroy evidence.

In *State v. Ford, supra*, the court concluded that the announcement requirement is excused if there is an objectively reasonable basis for quick action. Here, there was. An officer testified that there was an emergency to get inside "to stop the narcotics from being flushed." The officers had probable cause to believe that defendants were selling narcotics from the residence and that the drug involved, methamphetamine, is packed in small containers. They did not know how many people were in the house or where the drugs

might actually be located. We should not be so naive as to think that there is slight danger of drugs being disposed of in the face of threatened police action. It is essentially a risk that exists automatically in these circumstances. On an objective basis, prompt action by the officers was reasonable.

The majority concludes that suppression of all evidence is justified, because the violation of the statute was aggravated. Again, the total analysis of the majority is that the trial court made a finding to that effect, and that it is beyond review. The sole discussion by the trial court regarding aggravation was during its oral recitation of its ruling. After the court announced that there had been a violation of the statute, the prosecutor said:

> "With all due respect, I would point out that the statute doesn't require [suppression] unless the court finds it's aggravated.
>
> "The Court:   I do find it's aggravated."

The written order and the majority opinion are no more illuminating.

The concept of aggravating circumstances as a basis for suppression of evidence was first suggested in *State v. Bishop, supra*. The analysis was in terms of whether the actions of the police in violation of the statute substantially frustrated the purpose of the rule, *e.g.*, whether it created a danger of injury to the police or the occupants. The court also suggested that suppression could result if police were consistently and generally to disregard the announcement requirement.

In *State v. Arce*, 83 Or App 185, 730 P2d 1260 (1986), *rev den* 303 Or 332 (1987), the officers executed a search warrant that specifically authorized them to enter the residence without first announcing their presence or purpose. We described the entry:

> "Without warning, [the police] simultaneously kicked open the front and rear doors of the residence and entered with drawn weapons. As they entered, they shouted in Spanish and English that they were police and that they were authorized to search the house." 83 Or App at 187.

We held that there was a violation of the statute that was not excused by the specific endorsement in the warrant. We also

held that the violation was not aggravated, because the police reasonably believed they had authority to enter without an announcement.

*State v. Berardinelli*, 95 Or App 364, 769 P2d 235, *rev den* 308 Or 79 (1989), also involved execution of a search warrant. We recited the facts of the police entry of defendants' house:

> "The warrant was executed at about 3 a.m. by between eight and 15 officers. Some officers were in uniform, some in plain clothes and some in the SERT uniform, which includes a fire retardant hood and protective goggles. Police may have thrown a lead weight through an upper window at the same time that they kicked open the door and entered with guns drawn. There was evidence that, immediately on opening the door, they had identified themselves as police executing a search warrant and that they continued to do so each time they entered a new room. Soon after entering, they fired at defendants' two Dobermans, killing one and injuring the other." 95 Or App at 367.

We recited the principle that violation of the statute does not justify suppression of evidence unless the violation was aggravated and held that the violation there was not aggravated.

In this case, the purposes of the statute as expressed in *State v. Bishop, supra*, and *State v. Valentine/Darroch, supra*, were met. The occupants of the mobile home saw the police cars drive down the driveway, saw the officer come onto the deck and approach the door and, as the trial court found, the officers announced their identity, authority and purpose. The danger of conflict or injury to anyone was only, at that juncture, a slight risk. The only violation of the statute identified by the majority is that defendants and their mother were not given a reasonable opportunity to open the door. Breaking the door glass and knob before it could be opened may be tacky or undesirable in a polite society, but it is not an appropriate basis to suppress evidence seized pursuant to a valid search warrant.

Warren and Deits, JJ., join in this dissent.