Argued and submitted May 6, decision of the Court of Appeals reversed; order of the circuit court granting suppression vacated and case remanded to the circuit court for further proceedings September 2, 1993

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## DENNIS BOST,
*Respondent on Review.*

### (CC 89-3565-C-3; CA A63879 (Control))

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## GLEN BOST,
*Respondent on Review.*

### (CC 89-3564-C-3; CA A64175; SC S39881)

857 P2d 132

Rives Kistler, Assistant Attorney General, Salem, argued the cause for petitioner on review. On the petition were Michael C. Livingston, Assistant Attorney General, Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Steven Humber, Salem, argued the cause for respondents on review.

FADELEY, J.

## FADELEY, J.

Defendants in these consolidated cases contend that the police[1] failed to comply with the requirements of Oregon's "knock-and-announce" statute, ORS 133.575(2),[2] when entering premises to execute a search warrant. For that reason, defendants demand suppression of the evidence seized during the ensuing searches. The trial court and a divided Court of Appeals agreed with defendants. We conclude that the police did not violate ORS 133.575(2) in this case. We, therefore, reverse the decision of the Court of Appeals and remand the case to the trial court to consider state and federal constitutional issues, asserted by defendants, that the trial court did not reach.

Defendants, Glen and Dennis Bost, are brothers. Glen is charged with manufacture of a controlled substance, marijuana, and Dennis is charged with manufacture of both marijuana and methamphetamine. Their arrests and indictments followed a search of premises pursuant to a search warrant. The search uncovered evidence of the charged crimes.

The trial court found that the manner of police entry violated the knock-and-announce statute. The court suppressed the evidence obtained from the search, concluding that the violation of the statute was "aggravated," because there was no justification for noncompliance with the statute. The state appealed, and the Court of Appeals affirmed in a 7-3 *in banc* decision. *State v. Bost*, 114 Or App 519, 837 P2d 536 (1992). We allowed review with the intention to address the question whether, "aggravated" or otherwise, a violation of the knock-and-announce statute is a legal justification for imposition of the sanction of suppression of evidence. We now conclude, however, that, under the facts of this case, it is unnecessary to address that question.

---

[1] The term "police" refers generically to the officers of the several law enforcement agencies who executed the search warrant.

[2] ORS 133.575(2), which pertains to the execution of search warrants, provides:

"The executing officer shall, before entering the premises, give appropriate notice of the identity, authority and purpose of the officer to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be."

■     On review, we do not disturb the trial court's findings of historical facts if there is evidence in the record to support them. "If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion * * * made by the trial court." *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

The police obtained a search warrant to search described premises for drugs. The premises included a main residence, a mobile home occupied by Glen and his mother, and a travel trailer, with a connected room added, which proved to be occupied by Dennis and a companion. A long driveway led to the main residence.

The police arrived at about 8 a.m. to execute the search warrant, proceeding in several vehicles down the driveway to the main residence and parking about seven to ten feet from the front door. One of the several police vehicles was a marked patrol car with a uniformed officer at the wheel. The mother testified that she saw the cars coming down the driveway about "five minutes" before the police entered the main residence. The police, including some officers arrayed in blue windbreakers with "OREGON STATE POLICE" displayed in yellow letters and in state police hats, were aware that occupants of that residence had seen them through the front window.

Police officers ran to the house, where they could see Glen and his mother eating and talking at the kitchen table. The police announced their identity and yelled "police with a search warrant." The trial court found that Glen and his mother "simply looked and stared at the police officers and their response was to freeze. The [police] didn't give these occupants a reasonable opportunity to open the door." Although there was conflicting testimony on the point, one officer testified that, after parking the cars, the police ran to the door (a screen door and a regular door) and began smashing it within 15 or 30 seconds of arrival. In addition, another officer testified that as little as five to ten seconds elapsed from the time the police knocked and yelled "police with a search warrant" until they began to kick in the door.

At about the same time that the officers went to the mobile home, another officer looked in a window of the travel trailer and saw furniture suggesting that it could be occupied. Dennis and a companion were asleep in the trailer. The companion testified that she heard a bang on the door and heard the police announce "Medford Police, open up, we have a search warrant." No more than two seconds elapsed before the police broke down the door of the trailer, where she was and where Dennis was asleep.[3]

The parties, and the separate opinions in the Court of Appeals, dispute whether the "appropriate notice" required by ORS 133.575(2) mandates that the police give the occupants a reasonable opportunity to respond once the police have announced their presence, authority, and purpose and before the police may force entry. The trial court found that no such opportunity was provided to the residents of either part of the premises in this case. The parties also dispute whether exigencies, such as a concern for officer safety or a concern that evidence may be destroyed if entry is delayed, exist in this case to excuse the rapid, forcible entries. *See generally State v. Ford*, 310 Or 623, 801 P2d 754 (1990) (discussing the requirements of and exceptions to statutory knock-and-announce provisions). As to that latter dispute, the trial court found that there was "nothing in the evidence to suggest that the officers were concerned regarding their safety; that evidence was being destroyed; or any other reason to kick in the doors of the [premises]." We find it unnecessary to address the issue of possible exigencies, because we conclude that both courts below erred as to their disposition of this case under the "appropriate notice" issue in ORS 133.575(2).

■ As noted earlier, ORS 133.575(2) provides:

"The executing officer shall, before entering the premises, give appropriate notice of the identity, authority and purpose of the officer to the person to be searched, or to the

---

[3] The trial court found that the trailer occupied by "DENNIS BOST was similarly entered by the officers who announced their presence and who kicked open the door without allowing any sufficient time in which the occupants could respond." The facts stated in the text above are supported by the record, although contradicted by police testimony that entry came about 15 to 30 seconds after announcing and receiving no response.

We do not imply by our separate discussion concerning Glen and Dennis that more than one effort to comply with the knock-and-announce statute is needed in a case where different entrances to the same habitation are involved.

person in apparent control of the premises to be searched, as the case may be."

Under that statute, the police are to give notice of three things, *viz.*, identity, authority, and purpose. Notice of all three of those elements was given in this case.

■     As to "identity," the police identified themselves orally and, in this daylight search, visually as well, thus meeting that statutory requirement. Testimony of defendants' own witness, their mother, established that, for as much as several minutes before the officers entered her home, she knew that they were coming. The officers also knew that they had been seen. Under those circumstances, the few seconds between the officers' vocal announcement of their identity and their entry into the premises became irrelevant.

■     Neither is there any dispute that the officers gave notice of their "authority" — a search warrant — or of their "purpose" — execution of that warrant. The trial court specifically found (and the evidence supports a finding) that the officers announced that they were at the premises with a search warrant. Such an announcement having been made, we do not believe that it is necessary under the statute for the officers additionally to announce that they wish to execute the warrant; that purpose is the only one that a hearer fairly could infer from the circumstances.

■     It follows from the foregoing that the only element of ORS 133.575(2) at issue here is the requirement that the notice given by the officers be "appropriate." As noted, both the trial court and the Court of Appeals concluded that this requirement included some concept of a "reasonable time" within which the occupants of the premises to be searched could answer the request for admission. On the facts of this case, any such requirement — assuming it exists — was met.

This court has explained that

"the purpose of requiring officers to announce themselves before entry [is] 'grounded in practical experience: a police officer entering a house must guard against the possibility that he might be mistaken for someone with no right to be there.' [*State v. Cortman*, 251 Or 566, 570, 446 P2d 681 (1968)]. The purpose of the 'knock and announce' rule, in

other words, is the safety of the officers and others on the scene against violent consequences of a sudden, unexplained break-in * * *."

*State v. Davis*, 295 Or 227, 236, 666 P2d 802 (1983). As to that purpose, the only thing necessary to make the notice of identity, authority, and purpose "appropriate," as that term is used in the statute, is anything that would make it clear to an occupant of the premises that the officer who wanted to enter had a claim of right to do so. It follows that there is no magical period of time necessary to make an entry valid. Where, as here, the occupants have more than adequate notice that the police are the ones seeking entry, any arguable right of the occupants to resist entry evaporated the instant the officers announced that they had a search warrant. The officers, whose identity had been known for some minutes, were not required by the statute to wait any additional time, after announcing their authority and purpose, before entering the premises.

We hold that, on the facts of this case, there was no violation by the police of the knock-and-announce statute, ORS 133.575(2). The trial court rested its decision entirely on a violation of the knock-and-announce statute, which the trial court concluded had occurred. The Court of Appeals appears to have upheld the trial court on that basis, as well as on an additional basis that the trial court did not employ.[4]

The record made by the trial court does not include consideration of defendants' Article I, section 9, and Fourth Amendment claims. The trial court instead suppressed the evidence on the basis of an "aggravated" statutory violation of ORS 133.575(2). The trial court, thus, made no findings directed at any Article I, section 9, or Fourth Amendment claim, and findings could be crucial to resolution of those claims. Accordingly, we do not reach those claims, but remand the case to the trial court for further consideration.

The decision of the Court of Appeals is reversed. The order of the circuit court granting suppression is vacated. The case is remanded to the circuit court for further proceedings.

---

[4] The Court of Appeals' affirmance of the trial court also relied on the Fourth Amendment to the Constitution of the United States.