Argued and submitted January 30, affirmed November 9,
reconsideration denied December 17, 1981,
petition for review denied February 3, 1982 (292 Or 568)

# STATE OF OREGON,
## *Respondent,*
### *v.*
# MICHAEL LEE PONCE,
## *Appellant.*

## (No. C78-08-12637, CA 18043)

635 P2d 1042

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals from his convictions for the crimes of assault, attempted sodomy, kidnapping and robbery arising out of an episode in which a hitchhiker riding in a vehicle driven by defendant was slashed in the face with a knife, deprived of his liberty, ordered to engage in oral sex with a third passenger and ultimately forced to hand over his wallet. Following his conviction in his first trial, defendant appealed. *See State v. Ponce,* 43 Or App 665, 603 P2d 1243 (1979), where we held that the stop of defendant's vehicle was unlawful and that defendant's motion to suppress physical evidence seized at the time of the stop should have been granted. We reversed and remanded for a new trial.

Prior to the new trial, defendant filed two motions to suppress. The first sought suppression of the victim's show-up identification of defendant in the police station on the ground that the identification was the direct product of the unlawful stop of defendant, and also to suppress the courtroom identification of defendant on the ground that it was tainted by the prior unlawful show-up identification. The second motion was to suppress the show-up identification on the ground that the identification procedures were unduly suggestive,[1] and to suppress the in-court identification as being tainted by the show-up. The trial court denied both motions. On appeal, defendant assigns error to the denial of his motions to suppress both the out-of-court and the in-court identifications. We affirm.

### IN-COURT IDENTIFICATION

The question of whether an *in-court* identification may be regarded as the "fruit" of an unlawful arrest was resolve in *United States v. Crews,* 445 US 463, 100 S Ct 1244, 63 L Ed 2d 537 (1980). In *Crews,* the Court held that a courtroom identification need not be suppressed as the "fruit" of a concededly unlawful arrest, but was admissible for the following reasons: (1) the victim's presence in the

---

[1] The second point was raised in a motion to suppress at the first trial, which was denied by the trial court and was not assigned as error on appeal. It is not contended that the prior order denying suppression, being a final order which was not appealed, is *res judicata.*

courtroom was not the product of police misconduct, because her identity was known before any official misconduct occurred; (2) the illegal arrest did not in any way affect the victim's ability to give accurate identification testimony, and (3) the presence of the defendant himself in the courtroom was not suppressible, for the illegality of the initial detention could not deprive the government of the opportunity to prove defendant's guilt through the introduction of evidence wholly untainted by the police misconduct.

■    Defendant attempts to distinguish *Crews,* because there the intervening photographic and show-up identifications were not contended to be unduly suggestive. That is quite a different point. As in *Crews,* here the *victim's* presence in court was not the product of the unlawful stop. The stop did not affect the victim's ability to give accurate identification testimony based on his view of defendant prior to the stop. Defendant's presence in the courtroom is not a suppressible "fruit" of the misconduct, because the state is entitled to prove defendant's guilt through reliable identification unrelated to the unlawful stop. Therefore, the courtroom identification is not suppressible as a "fruit" of the unlawful stop, under the rationale of *Crews.*

## SHOW-UP IDENTIFICATION
### A.   AS POISONOUS FRUIT

With respect to the out-of-court show-up identification, *Crews* is helpful, but not dispositive. It is helpful because a majority of the Court agreed that the rationale of *Frisbie v. Collins,* 342 US 519, 72 S Ct 509, 96 L Ed 541 (1952), foreclosed the claim that a defendant's face can be suppressed as the "fruit" of an unlawful arrest. That would see to end the matter but for the fact that the parties conceded, and all members of the Court appeared to agree, that the photographic and line-up identifications were suppressible as "fruits" of the Fourth Amendment violation — the defendant had been taken into custody without probable cause.

■    If the Court's apparent acceptance of that proposition is taken at face value, there might be a problem here, because defendant contends he would not have been in custody if it had not been for the unlawful stop and would

not have been available for the show-up identification by the victim at the police station. Therefore, the argument goes, defendant's show-up identification by the victim was a "fruit of the poisonous tree" and should have been suppressed. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963). However, the Court in *Wong Sun* stated:

> "* * * We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959). * * *" 371 US at 487-8.

The question, then, is narrowed to whether defendant's identification was the result of "exploitation" of the initial illegality, or whether it was derived from "means sufficiently distinguishable to be purged of the primary taint." This is not a case where the police stopped the defendant unlawfully and, without more, took him off to the police station to see if the victim could identify him. Neither is this case in its present posture[2] one where the police caused the defendant to yield something of evidentiary value, such as fingerprints, during an illegal detention. *Davis v. Mississippi,* 394 US 721, 89 S Ct 1394, 22 L Ed 2d 676 (1969), held fingerprints so obtained were suppressible.[3] Rather, it is a case where an accurate description of defendant was given by the victim, was broadcast over the police radio and was received by the officer who stopped defendant on the highway. Although the officer did not stop defendant on the basis of the description, after the stop the officer realized that defendant matched the

---

[2] Physical evidence seized as a result of the illegal stop *was* suppressed as a result of our prior opinion in this case, *State v. Ponce,* 43 Or App 665,603 P2d 1243 (1979), and is no longer involved.

[3] In this connection, the situation here is analogous to *Bynum v. United States,* 104 US App DC 368, 262 F2d 465 (DC Cir 1958), where defendant's fingerprints obtained during an illegal arrest were suppressed, but on retrial an older set of fingerprints taken from the FBI files was held admissible because the older set was in no way connected with defendant's unlawful arrest.

description and arrested him at the scene.[4] It was not until *after* defendant's arrest that he was taken to the police station, where he was identified by the victim.

The police did not obtain defendant's description from the "primary illegality" — they already had it — and the victim had a visual perception of defendant, which was not related to the stop. It is true that the stop permitted the officer to fit defendant to the broadcast description, but once that matching was accomplished the officer had probable cause to arrest defendant, which he did. Defendant's arrest under these circumstances constituted a sufficient intervening circumstance between the stop and the showup identification to purge that identification from the primary taint.

We reach that conclusion recognizing that there may be cases where suppression of the defendant's pretrial identification may be the only meaningful sanction for deterring particular police conduct which violates the constitutional rights here involved. We also recognize that the deterrent effect of suppression is, like any sanction, largely dependent upon the degree of certainty that the sanction will follow from the conduct to be deterred. The less certainty that the sanction will follow, the less its deterrent value and, therefore, the less justifiable the sanction.

Those counter-currents require accommodation by the courts in an effort to approach reasonable certainty of the sanction without dilution of individual rights. Where, as here, the question is one of physical identification of the defendant, the temptation is to say that a defendant's face can never be "considered evidence suppressible as the 'fruit' of an illegal arrest." *United States v. Crews, supra,* White, J. concurring, 445 US at 478. That proposition has a nice ring to it, but is too pat. Suppose the defendant, like the defendant in *Davis v. Mississippi, supra,* is taken in by a

---

[4] The record in the suppression hearing is somewhat meager. There is evidence that defendant's physical description was given the police by the victim shortly after he was released, that the information was broadcast immediately over the police radio and that the arresting officer received the broadcast. The arresting officer was asked to describe defendant as he appeared at the time of the stop; his description matched that given by the victim. Both that officer and defendant testified that defendant was arrested on the scene shortly after the stop.

police dragnet, and while in custody is identified by the victim in a line-up. On those facts, we should consider "the purpose and flagrancy of the official misconduct," *Brown v. Illinois,* 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975), in deciding whether to impose the sanction.

By doing so, the certainty factor of the sanction might suffer, but not so much as individual rights would suffer if we did not do so. The point is that even though, as a general proposition, the flagrancy of the illegal police conduct is not a factor in determining whether physical evidence should be suppressed, because certainty of the sanction is desirable, there are cases where flagrancy of police conduct is relevant.

This case is one where that factor may legitimately be considered in determining what must be shown by way of intervening circumstances to dissipate the taint of the initial illegality. A minor intrusion requires less in the way of an intervening circumstance than a flagrant one. *Brown v. Illinois, supra.* We have said above that the officer's arrest of defendant on the scene after matching his appearance to the description given by the victim was sufficient to get the defendant to the police station for the show-up, notwithstanding the illegal stop. A *Terry*[5] type stop, by its nature, is considered sufficiently unintrusive that it need not be supported by probable cause; a reasonable suspicion that the defendant has committed a crime is sufficient. ORS 131.615. The only police misconduct here was the lack of an articulable basis for a reasonable suspicion justifying stopping defendant's car. The fact is, however, that a serious crime had been committed and the culprits were known to be heading south in a black car. It was not a random stop. Notwithstanding the illegality of the stop, the nature of the police misconduct in terms of intrusiveness did not change: it was the least intrusive interference with a person's freedom permitted without a showing of probable cause.

Under these circumstances, we find no flagrancy; the officer's ability, following the illegal stop, to match the description he already had with the physical appearance of defendant was a sufficient intervening circumstance to

---

[5] *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968).

dissipate the initial illegality. Therefore, the show-up identification was admissible, unless it was too suggestive to be reliable.

## B.  AS UNDULY SUGGESTIVE

Defendant's second contention is that the show-up identification was unduly suggestive and tainted the courtroom identification. That possibility is alluded to in *Crews:*

"This is not to say that the intervening photographic and lineup identifications — both of which are conceded to be suppressible fruits of the Fourth Amendment violation — could not under some circumstances affect the reliability of the in-court identification and render it inadmissible as well. Indeed, given the vagaries of human memory and the inherent suggestibility of many identification procedures [footnote omitted], just the opposite may be true. But in the present case the trial court expressly found that the witness' courtroom identification rested on an independent recollection of her initial encounter with the assailant, uninfluenced by the pretrial identifications, and this determination finds ample support in the record. [Footnote omitted.] * * *" 445 US at 473-74.

In support of his contention, defendant asserts: the victim was informed that suspects apprehended in a black vehicle (as the victim had reported to the police) were waiting at the police station; he was told about, and shown photographs of, a dog and a knapsack found in the vehicle (which he had described to police), before he was given an opportunity to view the suspects; and defendant (as well as a codefendant in a separate room) was seen struggling while surrounded by two or three police officers when he was being viewed by the victim, whereas three other suspects were viewed without police officers present in their viewing rooms.

The proper analysis of this issue is set forth in *State v. Classen,* 285 Or 221, 232-33, 590 P2d 1198 (1979):

"* * * As a practical matter, in the context of a motion by a defendant to suppress identification evidence on the ground that it is the product of a suggestive procedure, the decision on its admissibility involves two steps. First, the court must determine whether the process leading to the offered identification was suggestive or needlessly [footnote omitted] departed from procedures prescribed to avoid

such suggestiveness. If so, then the prosecution must satisfy the court that 'the proffered identification has a source independent of the suggestive confrontation' or photographic display, *see Commonwealth v. Botelho,* [369 Mass 860], 343 NE2d 876, 881 (Mass 1976) (citing cases), or that other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggestive procedure."

■ In this case, the trial court made the special finding that "[t]he identification procedure employed was not impermissibly suggestive." That is a conclusion of law by which we are not bound. We conclude that the show-up was unduly suggestive in that defendant was told beforehand that he would be viewing the suspects whom the police had just picked up in a black car near Salem that contained a dog and knapsack as described by the victim, photographs of which had been taken by the police. However, the victim testified that he identified defendant in the show-up *before* he saw any photographs.

■ Despite that suggestiveness, we find that because the show-up identification was *otherwise* reliable, it was admissible. In *Classen,* the Supreme Court enumerated a number of factors to be considered in determining whether the identification had a source independent of the suggestive confrontation, including the opportunity the witness had to get a clear view of the person, the attention given to identifying features, the timing and completeness of the description given by the witness after the event, the certainty expressed by the witness in that description and in making the subsequent identification, and the lapse of time between the original observation and the subsequent identification. The ultimate issue is whether an identification made in a suggestive procedure has nevertheless been demonstrated to be reliable despite that suggestiveness. 285 Or at 233.

■ Here, the victim, while a passenger in defendant's car, had a full view of defendant's face when defendant turned around three or four times and looked the victim right in the eye. The victim also was able to see, reflected in the rearview mirror, the eyes, nose and forehead of the defendant. At the suppression hearing, the victim stated

that he had no doubt that he could have recognized defendant after two years had he seen him only in the car, because "[h]e has very, very distinctive cheekbones and close-together eyes, scant eyebrows and very distinguishable." The victim also stated that he would be able to pick defendant out of a crowd of 500 persons. The victim described defendant to the police minutes after the incident:

> "[The driver] was a white male adult, approximately 30, curly brown hair past the shoulders, had a mustache, a straggly beard, at the time, five-foot ten to five-foot eleven, approximately 140 pounds, mustache, T-shirt . . . a black shirt here with blue jeans and a gold earring in one of the ears."

The only respect in which defendant contends that description was inaccurate is that mention of defendant's eyes was omitted. The description was given promptly and was essentially complete under the circumstances. Furthermore, the victim showed no hesitation in positively identifying defendant approximately four hours after the incident. We conclude that the show-up identification had a source independent of any suggestive procedures and was reliable. Refusal to suppress on the basis of undue suggestiveness was not error.

■    With regard to the courtroom identification, the trial court found that "[t]he victim's identification of the defendant had an independent basis and was not tainted by any prior procedures." Insofar as that is a finding of fact, we are bound if it is supported by the evidence. *See State v. Peller,* 287 Or 255, 260, 598 P2d 684 (1979) (substantial evidence scope of review governs existence of exigent circumstances to justify warrantless search). The facts articulated above demonstrate that the victim had a strong and independent recollection of the appearance and identity of defendant. Accordingly, even if the out-of-court identification had not been admissible, the in-court identification was.

For the foregoing reasons, we hold that the trial court did not err in admitting the show-up and courtroom identifications of defendant.

Affirmed.