Argued and submitted July 30, 1982, affirmed April 27, 1983

STATE OF OREGON,
*Appellant,*
*v.*
ERIC LAWRENCE TWEED,
*Respondent.*

(C81-10-35462; CA A23500)

STATE OF OREGON,
*Appellant,*
*v.*
CATHERINE MARIE TWEED,
*Respondent.*

(C81-10-35461; CA A23753)
(Cases Consolidated.)

663 P2d 38

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Wayne Mackeson, Certified Law Student, Portland, argued the cause for respondent Eric Lawrence Tweed. Diane L. Alessi, Portland, argued the cause for respondent Catherine Marie Tweed. On the brief were Des Connall, John S. Ransom and Des Connall, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., specially concurring.

## BUTTLER, P. J.

The state appeals a pretrial order suppressing evidence seized pursuant to a search warrant on the ground that the officers executing the warrant violated the knock-and-announce requirement imposed by ORS 133.575(2) and the Fourth Amendment. We affirm.

At approximately 9:30 p.m. on August 25, 1981, Portland Police Officer Mason, who was assigned to the Narcotics Detail of the Drug and Vice Division, obtained a valid warrant authorizing the search of defendants' residence and the person of defendant Catherine Tweed for marijuana, barbiturates and items of identification. After obtaining the warrant, Mason and two other plainclothes officers bought a six-pack of beer at approximately 10 p.m. They testified that they purchased the beer as a "cover" for dealing with other persons whom they were investigating for possible narcotics violations. All three officers drank beer — about "a beer and a half" in the case of two of them — prior to executing the warrant, although they were "pretty sure" that they would execute it that night.

At approximately 12:15 a.m. on August 26, the three officers were joined by four more plainclothes officers and one uniformed officer. At about 12:30 a.m., the eight officers approached defendants' home. Two plainclothes officers went to the back door, and Mason knocked on defendants' front door with the remaining officers standing behind him. Eric Tweed opened the door slightly to see who was there. He did not recognize the person at the door, so he opened it farther, at which time Mason stepped through the door into the hallway, displayed a badge and then pulled an automatic weapon from beneath his coat and pointed it at Eric. Eric testified that while Mason went through those motions, he appeared to be either very nervous or intoxicated, because the gun was shaking. Mason said nothing before entering the house, and defendants did not then see the only uniformed officer, who remained outside. Catherine Tweed testified that she heard no one identify himself as a police officer or state that he had a search warrant until the officers were inside. Both defendants testified that they thought they were being robbed.

The other officers followed immediately behind Mason and dispersed in different directions throughout the house to look for weapons; they found none. Mason held the gun on Eric for "about half a minute" before putting it away. Eric asked if, in fact, they were police and whether they had a search warrant. He had not seen the uniformed officer prior to that time. After the preliminary security search for weapons was completed, Mason read the search warrant, at least in part, and the search for contraband followed, resulting in the seizure of a large quantity of marijuana in a bedroom.

Mason smelled of alcohol, according to both Eric and the uniformed officer, tripped without apparent reason as he attempted to hand Catherine the warrant, and his speech was slurred. Eric did not know if any of the other officers were intoxicated. He testified that he was afraid of Mason because he had displayed a firearm and appeared to be intoxicated; he agreed to step outside on the porch for an interview with Mason only if accompanied by the uniformed officer.

■ Although the trial judge did not make detailed findings of fact,[1] he found that the officers had no reason to believe that they were about to execute the warrant on a major drug ring, that large quantities of narcotics would be found or that the occupants of the house would be armed or dangerous. He also found that the officers had failed to comply with the "knock-and-announce" rule and that there

---

[1] The trial judge explained his view of the evidence and his reasons for concluding that suppression was the appropriate remedy. The record supports the specific findings he did make and also supports his conclusions. As stated in *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968):

"What actually transpired is a question of fact for the trial court or jury. If the evidence sustains such historical factual findings they will not be disturbed by this court. If findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion, e.g., voluntariness or lack thereof, made by the trial court or jury. Whether these historical facts as found are sufficient to sustain a finding of voluntariness which meets state and federal constitutional concepts of due process is another question, and one which falls within our proper scope of appellate review. * * *"

Whether the trial court correctly applied constitutional principles to the facts is for the appellate court. *State v. Warner,* 284 Or 147, 585 P2d 681 (1978).

were no exigent circumstances to justify their non-compliance. Implicit in the court's explanation of its ruling is the finding that the violation was not merely a technical one, but violated defendants' Fourth Amendment rights as well and was sufficiently aggravated that suppression was justified for both the statutory and constitutional violations.

■    The "knock-and-announce" rule has roots in the Fourth Amendment, *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963), and is codified in ORS 133.575(2)[2] (with respect to search warrants) and in ORS 133.235(6)[3] (with respect to arrest warrants). It requires that officers executing a warrant identify themselves and state their authority and purpose prior to entering the premises. Although the state concedes that the trial court's finding that the requirements of the rule were violated is supported by the record, it contends that it was only a technical one that does not require suppression of the evidence seized, relying on *State v. Valentine/Darroch,* 264 Or 54, 66-69, 504 P2d 84 (1972), *cert den* 412 US 948 (1973), and *State v. Bishop,* 288 Or 349, 605 P2d 642 (1980).

In both of those cases, the court treated the violations as statutory, not rising to the level of a violation of either the Oregon or federal Constitutions, and declined to order suppression. They have been cited for the proposition that suppression of evidence is not justified for a statutory violation by the police, most recently in *State v. Brock,* 294 Or 15, 653 P2d 543 (1982) (nighttime search authorized in violation of statute). It has been thought that suppression in such cases would result in an overdose of deterrence. That approach, however, has not been uniform, and it has qualifications.

---

[2] ORS 133.575(2) provides:

"The executing officer *shall, before entering the premises,* give appropriate notice of his identity, authority and purpose to the person to be searched, or to the person in apparant control of the premises to be searched, as the case may be." (Emphasis supplied.)

[3] ORS 133.235(6) provides:

"If after giving notice of the officer's identity, authority and purpose, the officer is not admitted, the officer may enter the premises, and by a breaking, if necessary."

■ Since *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977), evidence seized in violation of ORS 131.615 (authorizing police to stop a person if the officer reasonably suspects the person has committed a crime) has been suppressed, because the purpose of the statute is to protect "interests of the kinds which are protected by the Fourth Amendment to the United States Constitution and by Article I, section 9, of the Oregon Constitution." 277 Or at 629. *But see State v. Ponce,* 54 Or App 581, 635 P2d 1042 (1981), *rev den* 292 Or 568 (1982). Yet the Oregon stop statute (ORS 131.615) is more restrictive than the Fourth Amendment requires, *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), and, therefore, may be violated without necessarily encroaching on Fourth Amendment rights.

■ On the other hand, the "knock-and-announce" statute is a codification of the requirements of the Fourth Amendment as enunciated by the United States Supreme Court in *Ker.* Although it is true that the Oregon Supreme Court held in both *Valentine/Darroch* and *Bishop* that the "knock-and-announce" requirements are not a part of the protection afforded by Article I, section 9, of the Oregon Constitution, the fact that a statutory violation may infringe only the federal constitution would not seem to offer a viable distinction from *Valdez.* We understand *Valdez* to hold that if the statute violated is intended to protect interests of the kind protected by the relevant state or federal constitutional provisions, evidence obtained as a result of the violation is subject to suppression, because that is "the only practical method which has been devised to protect rights of this kind * * *." *State v. Valdez, supra,* 277 Or at 629. Further, we understand *State v. Valentine/Darroch, supra,* to construe the "knock-and-announce" rule as intended (1) to protect persons who might be injured by violent resistance to unannounced entries and (2) to protect the householder's right to privacy. In order for the statutory violation to rise to the magnitude of a constitutional infringement, both interests must be violated. *State v. Valentine/Darroch, supra,* 264 Or at 64-65; *State v. Bishop, supra,* 288 Or at 356-57. If they are, those two cases indicate that suppression is the appropriate remedy.

Aside from circumstances giving rise to a constitutional violation, the court indicated in both *Valentine/Darroch* and *Bishop* that, if the circumstances of the statutory violation were particularly aggravated, or if disregard of the statutory requirements were to become prevalent, suppression may be appropriate to enforce compliance. In neither case did the court find both interests protected by the rule violated or that the circumstances were particularly aggravated. In *Valentine/Darroch,* the officer gained entry by "ruse or subterfuge," so there was no possibility of violence as a result of the entry, although defendant's right of privacy was invaded. In *Bishop,* two uniformed police officers executing an arrest warrant knocked and identified themselves to defendant's wife, who opened the door. They said they wanted to speak to her husband; she said he was not there and stepped out on the porch to talk with them further. As she did so, one of the officers became aware that there was a man in the room behind her, so he went through the doorway.

■ Here, we think that the record supports the trial judge's conclusion that the circumstances of the officers' entry violated both interests intended to be protected by the rule, thereby constituting a *constitutional* violation, and also that the circumstances were particularly aggravated. The privacy interest the rule protects was described in *Valentine/Darroch* as "the right to know who is entering, why he is entering, and a few seconds to prepare for his entry." 264 Or at 60. Defendants knew that someone was at the door, but they did not know who they were or that they intended to enter without permission, much less why they intended to enter.

The interest in protecting persons from the harm that could come to them from the possibility of violence occurring because of an unexplained entry was also violated. At 12:30 a.m., Eric, in response to a knock, opened his front door slightly, with his wife and two children at home; a man who was not objectively identifiable as a police officer, smelling of alcohol, stepped through the door into the hallway without first identifying himself or stating his mission, hastily displayed a badge and drew a gun, which shook as he held it. Other unidentified men, also in plainclothes, rapidly followed the first. It would not be

unreasonable for a householder, given those circumstances, to believe that he was about to be the victim of an armed robbery or otherwise endangered and to react violently to protect himself, his wife and children. Accordingly, we cannot say that the trial court erred in concluding that defendants' Fourth Amendment rights were violated.

Affirmed.

**ROSSMAN, J.,** specially concurring.

I agree with the result in this case and with the majority's holding that the trial court did not err in suppressing the evidence on the ground that defendant's Fourth Amendment rights were violated by the officer's failure to "knock and announce." However, I would also hold, as the majority apparently does not, that under these circumstances the statutory violation *itself* also mandates suppression. The majority has determined:

"[T]he record supports the trial judge's conclusion that the circumstances of the officer's entry [1] violated both interests intended to be protected by the rule, thereby constituting a constitutional violation *and* also [2] that the circumstances were particularly aggravated [thereby constituting a statutory violation warranting suppression]." (Emphasis supplied.)

If the circumstances were such that suppression on statutory grounds alone was justified, and I agree that they were, then we should so hold. Furthermore, "aggravated" in this context has been given little, if any, content in the past, *see, e.g., State v. Bishop,* 288 Or 349, 605 P2d 642 (1980), thus, more clarity on our part in this case would be helpful to trial courts in the future.

Therefore, I would hold that on constitutional *and* statutory grounds, the evidence was properly suppressed. As the trial court stated in its comprehensive and helpful analysis:

"All right. I will expressly find that ORS 133.575, in my judgment, carries out a constitutional requirement. I think both on a constitutional ground *and* on the grounds of the statute, and in the sound administration of justice, that evidence should be suppressed when a search of this kind is made — *two separate grounds.* As a matter of public policy expressed in that statute, evidence should be suppressed." (Emphasis supplied.)