Submitted on record and briefs July 20, 1988, resubmitted In Banc July 12, reversed and remanded for new trial October 18, 1989, reconsideration denied March 14, petition for review allowed April 26, 1990 (309 Or 698)
See later issue Oregon Reports

# STATE OF OREGON,
*Respondent,*

*v.*

# CHARLES TIMOTHY FORD,
*Appellant.*

(10-87-01668; CA A45907)

780 P2d 1192

Gary D. Babcock, Public Defender, and Peter Gartlan, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General, Salem, filed the brief for respondent.

BUTTLER, J.

Deits, J., dissenting.

**BUTTLER, J.**

Defendant appeals his conviction for unlawful possession of a controlled substance, ORS 475.992, assigning error to the trial court's failure to suppress evidence obtained in the course of a search allegedly conducted in violation of the "knock and announce" rule, ORS 133.235, and the Fourth Amendment. We agree that the search constituted a statutory violation that requires suppression and reverse.

Eugene Police Officer Nauta stopped defendant and a woman while they were in a car in which defendant was a passenger. Nauta asked defendant and the woman for their names and addresses. The woman gave her name (Jones) and her address and stated that defendant was staying with her. Defendant identified himself as Douglas Ford, rather than by his real name, Charles Ford, and confirmed that he was living with the woman. Nauta testified that, during the encounter, he saw a blue back pack in the back of the car.

The next day, an anonymous caller informed the Eugene Police Department that he had just left an apartment in which Charles Ford and Jones resided, that Ford possessed jewelry which may have been stolen, that he also had five concealable firearms, two of which he had on his person and three of which he kept in a blue back pack, and that he was in possession of methamphetamine. Nauta recognized the name of the woman and the address and, remembering that she had had a passenger with her the day before, he compared police photos of Charles and Douglas Ford. Nauta then realized that the passenger had been Charles (defendant), an ex-convict with outstanding arrest warrants for failure to appear on felony driving while suspended and criminal trespass I charges. Another officer then told Nauta that an owner of a buy/sell shop had told him three weeks earlier that defendant had sold him a concealable firearm and that he had left the shop with another firearm in his possession.

The police obtained a warrant to search for defendant in order to execute the warrants for his arrest and for concealable firearms in his possession. The state concedes that the search warrant was defective on its face, because it did not describe with particularity the place to be searched. Defendant does not assert that the evidence should be suppressed because the search warrant was defective; his only contention

is that the evidence was obtained during an improper execution of the outstanding arrest warrants.

While the application for the search warrant was being processed, two officers drove to the apartment complex to determine the layout of the residence. While they were in the parking lot, a man stepped onto the balcony of Jones' apartment and watched them until they were out of sight. Meanwhile, another officer in an unmarked surveillance van watched the apartment until the warrant was issued. During that time, he saw another man being admitted to the apartment by someone inside. Neither of the men observed by the police outside the apartment was defendant. However, throughout that time, the car in which defendant had been seen the day before was parked directly below the apartment.

The police chose to execute the search warrant with a tactical team. Six to eight officers arrived with the warrant. All wore face masks and camouflage military fatigue uniforms with placards on the front identifying them as police. Using a battering-ram, one officer struck the door three times until it broke open, while another shouted "Police officers with a search warrant." They entered the apartment with their guns drawn, at which time defendant began shouting, "Is it the cops? Is it the cops?" to the woman. Defendant was handcuffed and, when he did not calm down, an officer put a hood over his head.

Defendant assigns error to the trial court's denial of his motion to suppress, arguing that the execution of the arrest warrants violated the "knock and announce" rule of ORS 133.235, which provides, in part:

"(5)   In order to make an arrest, a peace officer may enter premises in which the officer has probable cause to believe the person to be arrested to be present.

"(6)   If *after* giving notice of the officer's identity, authority and purpose, the officer is not admitted, the officer may enter the premises, and by a breaking, if necessary." (Emphasis supplied.)

The officers here did not announce their presence and purpose before they battered the door down. Their conduct was a clear violation of the statute. The violation requires suppression of evidence obtained as a result of the unlawful entry if (1) it is

aggravated or (2) it also constitutes a constitutional violation. *State v. Bishop,* 288 Or 349, 352, 605 P2d 642 (1980).

We noted in *State v. Tweed,* 62 Or App 711, 663 P2d 38 (1983), that in *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973), and *State v. Bishop, supra,*

> "the court treated the violations as statutory, not rising to the level of a violation of either the Oregon or federal Constitutions, and declined to order suppression. They have been cited for the proposition that suppression of evidence is not justified for a statutory violation by the police, most recently in *State v. Brock,* 294 Or 15, 653 P2d 543 (1982) (nighttime search authorized in violation of statute). It has been thought that suppression in such cases would result in an overdose of deterrence. That approach, however, has not been uniform, and it has qualifications.

> "Since *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977), evidence seized in violation of ORS 131.615 (authorizing police to stop a person if the officer reasonably suspects the person has committed a crime) has been suppressed, because the purpose of the statute is to protect 'interests of the kinds which are protected by the Fourth Amendment to the United States Constitution and by Article I, section 9, of the Oregon Constitution.' 277 Or at 629. *But see State v. Ponce,* 54 Or App 581, 635 P2d 1042 (1981), *rev den* 292 Or 568 (1982). Yet the Oregon stop statute (ORS 131.615) is more restrictive than the Fourth Amendment requires, *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), and, therefore, may be violated without necessarily encroaching on Fourth Amendment rights.

> "On the other hand, the 'knock-and-announce' statute is a codification of the requirements of the Fourth Amendment as enunciated by the United States Supreme Court in *Ker.* Although it is true that the Oregon Supreme Court held in both *Valentine/Darroch* and *Bishop* that the 'knock-and-announce' requirements are not a part of the protection afforded by Article I, section 9, of the Oregon Constitution, the fact that a statutory violation may infringe only the federal constitution would not seem to offer a viable distinction from *Valdez.* We understand *Valdez* to hold that if the statute violated is intended to protect interests of the kind protected by the relevant state or federal constitutional provisions, evidence obtained as a result of the violation is subject to suppression, because that is 'the only practical method

which has been devised to protect rights of this kind * * *.' *State v. Valdez, supra,* 277 Or at 629. Further, we understand *State v. Valentine/Darroch, supra,* to construe the 'knock-and-announce' rule as intended (1) to protect persons who might be injured by violent resistance to unannounced entries and (2) to protect the householder's right to privacy. In order for the statutory violation to rise to the magnitude of a constitutional infringement, both interests must be violated. *State v. Valentine/Darroch, supra,* 264 Or at 64-65; *State v. Bishop, supra,* 288 Or at 356-57. If they are, those two cases indicate that suppression is the appropriate remedy.

"Aside from circumstances giving rise to a constitutional violation, the court indicated in both *Valentine/Darroch* and *Bishop* that, if the circumstances of the statutory violation were particularly aggravated, or if disregard of the statutory requirements were to become prevalent, suppression may be appropriate to enforce compliance. In neither case did the court find both interests protected by the rule violated or that the circumstances were particularly aggravated. In *Valentine/Darroch,* the officer gained entry by 'ruse or subterfuge,' so there was no possibility of violence as a result of the entry, although defendant's right of privacy was invaded. In *Bishop,* two uniformed police officers executing an arrest warrant knocked and identified themselves to defendant's wife, who opened the door. They said they wanted to speak to her husband; she said he was not there and stepped out on the porch to talk with them further. As she did so, one of the officers became aware that there was a man in the room behind her, so he went through the doorway." 62 Or App at 715.

In *Tweed,* seven plain-clothes officers and one in uniform executed a warrant to search the defendant's home for drugs. An officer in plain clothes knocked on the door while five officers, including one in uniform, stood behind him. The defendant opened the door and, when he did so, a non-uniformed officer stepped inside, displayed his badge and pulled a pistol, pointing it at the defendant. The officer did not identify himself before entering or state his purpose. The officer smelled of alcohol and admitted to having consumed one and one-half beers about two and one-half hours before executing the warrant. Neither the defendant nor his wife knew that the men were officers or that they had a warrant until they were inside. We held that the evidence must be suppressed, because the circumstances of the officers' entry violated both interests intended to be protected by the rule,

thereby constituting a constitutional violation, and also that the circumstances were particularly aggravated.

This case is closer to *Tweed* than it is to *State v. Valentine/Darroch, supra,* or *State v. Bishop, supra.* In neither of the latter two cases did the officers break the door down, nor did their conduct in entering the home endanger the safety of those within, although it did invade the privacy interest of the occupants. In *Tweed,* although the officers entered peacefully, they created a situation in which the occupants could reasonably have believed that they were the victims of an armed robbery and might have reacted violently.

Here, the officers believed that their violent entry was justified because of "the potential danger involved" and because "the element of surprise is probably our biggest safety factor." We recognize that there is always a potential for danger in executing a warrant and that the element of surprise may be of benefit to the police. Here, however, there is no suggestion that the police thought that they were about to execute a warrant for a major drug ring or that the occupants were dangerous. They did have reason to believe that defendant carried one or more pistols, but they also knew that the warrants for his arrest related to non-violent offenses and that he had no history of violence. Although the officers testified that one of them shouted "Police officers with a search warrant" while another hit the door three times with a battering ram, it is not surprising that the announcement was not heard, at least by defendant, who began shouting, "Is it the cops?" as the officers entered.

Although the trial judge made no express findings on the motion to suppress, we assume that he made findings consistent with his implicit legal conclusion that the forced entry was not aggravated. *See Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). However, there is no dispute but that the occupants' privacy was invaded or that the police made no attempt to comply with the statutory requirements that they announce their presence, authority and purpose before entering or that they wait until entry is refused before using force. We do not believe that making the announcement simultaneously with a very noisy and violent forced entry, or the general potential for danger or the general benefit of surprise mitigate the violation or minimize the aggravated nature of

the violation here. If they did, the statutory requirements would be meaningless.

We conclude that the statutory violation was aggravated, requiring suppression of the evidence.[1]

Reversed and remanded for new trial.

**DEITS, J.,** dissenting.

This case involves the execution of an arrest warrant in a situation where the police had legitimate concerns for their safety. The majority's decision requires police officers to follow the technical requirements of the knock and announce statute in the face of information which leads them to believe that by doing so, they will be at substantial risk of death or injury. We have never required that before, and we should not do so now. I agree with the majority that the "knock and announce" statute was violated here. However, I do not agree that the violation was aggravated. Accordingly, I dissent.

The test for determining when an aggravated violation has occurred has not been precisely articulated. The majority examines other cases involving this issue and concludes that the facts here are closest to *State v. Tweed,* 62 Or App 711, 663 P2d 38 (1983), the one case where a violation of the statute was found to be aggravated. In *Tweed,* the police obtained a warrant to search the defendant's home for "marijuana and barbituates." They had no special reason to be concerned for their safety other than general concerns that accompany the execution of a search warrant. Two hours before they executed the warrant, the officers decided to drink a "couple of beers." This then occurred:

> "At 12:30 a.m., [defendant's husband], in response to a knock, opened his front door slightly, with his wife and two children at home; a man who was not objectively identifiable as a police officer, smelling of alcohol, stepped through the door into the hallway without first identifying himself or stating his mission, hastily displayed a badge and drew [from under his coat an automatic weapon], which shook as he held it. Other unidentified men, also in plainclothes, rapidly followed the first." 62 Or App at 717.

---

[1] Given our conclusion that the statutory violation was aggravated, we do not decide whether it also violated the federal constitution.

The first officer proceeded to hold his gun on the defendant's unarmed husband for half a minute, then tripped, without apparent reason, as he attempted to hand defendant the search warrant. I would agree that the violation in *Tweed* was aggravated, but this case is a far cry from *Tweed*.[1]

The similarity between this case and *Tweed,* according to the majority, is that the occupants reasonably could have believed they were the victims of an armed robbery and might have reacted violently. However, the facts in this case are quite different. Here, although the police did not announce their presence *before* they entered, as they should have under the statute, they did so *as they entered* and continued to announce their presence throughout the search of the residence.[2] They also had placards on the front of their clothes identifying them as police. Further, they did not smell of alcohol or behave in a manner that would cause one to doubt if they were police officers, as did the officers in *Tweed.*

Additionally, there was no evidence in *Tweed* that the officers were concerned for their safety, and they did not articulate any other reason for not announcing their entry. As recognized in *State v. Berardinelli,* 95 Or App 364, 769 P2d 235, *rev den* 308 Or 79 (1989), an important consideration in determining if a violation of the knock and announce statute has occurred is the officers' reasons for entering in the manner that they did.[3] In *Berardinelli,* where the warrant was executed at 3 a.m., some officers were in uniform and some were in plain clothes, while others wore special uniforms with hoods and goggles. The officers threw a stun grenade into an upper window, causing a loud explosion, as a "diversionary tactic." They

---

[1] Although the majority in *Tweed* found a violation of the constitutional knock and announce requirement, it is not entirely clear that the statutory violation was found to be aggravated. *State v. Tweed,* 62 Or App 711, 663 P2d 38 (1983) (Rossman, J., specially concurring).

[2] The majority acknowledges that the police did announce their presence as they entered, but concludes that that was ineffective, because the entry was noisy. Even assuming that the initial entry was noisy, the fact that the police continued to announce their presence was sufficient to let the occupants know that they were police. Moreover, an officer testified that one of the occupants told defendant that it was the police when defendant asked, "Is it the cops?"

[3] *Berardinelli* dealt with a violation of the knock and announce rule codified in ORS 133.575(2), relating to the execution of search warrants. Although the specific wording in the two statutes is not identical, the analysis of a violation under either is virtually the same. *See State v. Arce,* 83 Or App 185, 188 n 2, 730 P2d 1260 (1986), *rev den* 303 Or 332 (1987); *State v. Bishop,* 288 Or 349, 352, 605 P2d 642 (1980).

kicked open the door and entered with guns drawn. Soon after entering they fired at the defendants' two Dobermans, killing one and injuring the other. The defendants contended that the police did not announce their identity and purpose until after they entered. The occupants testified they had no idea what was happening. Two of them testified that they thought they were being robbed. We held that the violation was not aggravated, because the police had reason to believe that compliance with the statute could have endangered both them and the occupants of the house. There was evidence that the officers believed the occupants to be armed, that there were two large guard dogs in the house and that lookouts were posted to alert the occupants to the presence of police. *State v. Berardinelli,* 95 Or App at 367-68.

Here, the officers had reason to believe that defendant had five handguns in his possession. They knew, from observing him during a traffic stop the day before, that he had behaved in a nervous manner in the presence of the police.[4] They knew that there were two outstanding warrants for his arrest. They were aware that two other men were present in the apartment with defendant and that at least one of them had been watching police activities outside the apartment. Finally, they knew that defendant probably was in possession of stolen property and methamphetamine.

The majority dismisses all of that information by stating that "there is no suggestion that the police thought that they were about to execute a warrant for a major drug ring or that the occupants were dangerous." I am unaware of any requirement that the warrant must relate to a major drug ring before a violation of the knock and announce statute will be excused. The statement that there was no suggestion that the occupants were dangerous ignores reality. The officers expressed concerns for their safety, and those concerns were supported by objective facts.[5]

---

[4] Defendant was so nervous that the officer asked the driver of the car that had been stopped whether defendant had a gun and called backup officers to help him with the traffic stop.

[5] At the suppression hearing, the officer who led the search of defendant's apartment testified:

"Q. Why did you select a forced entry?

"A. Because of the potential danger involved. The element of surprise is probably our biggest safety factor."

The majority asserts that the police should not have been concerned about defendant's possession of weapons, because he had only been arrested for non-violent crimes and had no history of violence. It is preposterous to hold that an officer cannot act consistent with legitimately held safety concerns when executing a warrant on a suspected drug user believed to be in possession of drugs, stolen property and weapons, unless the officer has knowledge that the person has used the weapons in a violent manner or has a history of violence. The majority would seem to require actual proof that a situation is dangerous, rather than a more reasonable standard, which I would adopt, that there be objective facts to support the officer's belief that a situation is dangerous. Accordingly, in this case, I would hold that the violation of the knock and announce statute was not aggravated.

Defendant also argues that the officers violated the knock and announce requirement of the federal constitution. To rise to that level, two conditions must exist. First, the violation must conflict with both of the rule's purposes, *i.e.,* the protection of those who might be injured in an unannounced entry and the protection of the homeowner's right of privacy. *See State v. Berardinelli, supra,* 95 Or App at 368; *State v. Bishop, supra,* 288 Or at 356. Second, the justification for the violation must not fall within one of the three emergency exceptions to the rule: preventing the destruction of evidence, preventing the escape of persons within the premises or preventing harm to the officers or to others in the premises. *State v. Arce,* 83 Or App 185, 188, 730 P2d 1260 (1986), *rev den* 303 Or 332 (1987). As discussed above, the violation was justified by the officers' concern for their safety and, therefore, there was no constitutional violation. I would affirm.

Richardson and Rossman, JJ., join in this dissent.