Argued and submitted February 12, reversed and remanded September 16, reconsideration denied December 23, 1992, petition for review denied January 26, 1993 (315 Or 312)

STATE OF OREGON,
*Appellant,*

*v.*

RICHARD LEE ARNOLD, SR.,
*Respondent.*

(90C-21272; CA A69798 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

RICHARD LEE ARNOLD, JR.,
*Respondent.*

(90C-21273; CA A69799)

STATE OF OREGON,
*Appellant,*

*v.*

WILLIAM EVERETT PHILLIPS,
*Respondent.*

(90C-21274; CA A69800)

STATE OF OREGON,
*Appellant,*

*v.*

SHELLI LYNN THOMAS,
*Respondent.*

(90C-21275; CA A69801)

STATE OF OREGON,
*Appellant,*

*v.*

DARLENE ESTER CARTER,
*Respondent.*

(90C-21277; CA A69802)

STATE OF OREGON,
*Appellant,*

*v.*

JAMES EDWARD GUNN,
*Respondent.*

(90C-21280; CA A69803)
(Cases Consolidated)

838 P2d 74

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant in each case. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

C. Fredrick Burt, Salem, waived appearance for respondent Richard Lee Arnold, Sr.

No appearance for respondent Richard Lee Arnold, Jr.

Helen L. Cooper, Salem, argued the cause for respondent William Everett Phillips. On the brief were Paul M. Ferder and Ferder, Ogdahl, Brandt & Casebeer, Salem.

Sally L. Avera, Public Defender, and Peter Gartlan, Deputy Public Defender, Salem, filed the brief for respondents Shelli Lynn Thomas and James Edward Gunn.

Noel Grefenson, Salem, filed the brief for respondent Darlene Ester Carter.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Deputy Sheriff Hamilton obtained a warrant to search Roger Dale Box's house for controlled substances. Hamilton and a search team searched Box's house and found methamphetamine. Defendants were indicted for possession of a controlled substance. ORS 475.992(4). The affidavit supporting the warrant application was based, in part, on observations that officers had previously made during a warrantless search of the house. The court ruled that that information should be excised from the affidavit, because the state failed to establish that the person who consented to the warrantless search had actual authority to grant consent. It then ruled that, without that information, the affidavit did not establish probable cause to search Box's house, and it granted defendants' motions to suppress. The state appeals. ORS 138.060(3). We reverse.

In his affidavit, Hamilton said:

"Detective Welty said that on September 20, 1990 at approximately 1:00 pm, he and two other detectives gained consent [to] search Roger Box's residence by Richard Arnold who was in control of the residence, as they were searching for a wanted person. * * * Welty further stated that while he and other detectives were searching the residence he observed paraphernalia and packaging material associated with the sales and use of methamphetamines. Detective Welty said that he observed Arnold pick up a piece of plastic that Arnold put in his mouth. Detective Welty said that he recognized this piece of plastic as part of a package used to contain methamphetamine, as Detective Welty has worked in [an] undercover capacity and purchased methamphetamines on more than thirty (30) separate occasions."

The trial court ruled that Welty's statements about what he saw in Box's house should be stricken from the affidavit, because the state failed to establish that Arnold had actual authority to consent to a search. The state bears the burden of proving the lawfulness of a warrantless search. ORS 133.693(4); Or Const, Art I, § 9; *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991); *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983).[1] Voluntary consent is a recognized exception

---

[1] The state cannot shift the burden to the defendant simply by putting the evidence gleaned from a warrantless search into an affidavit in support of an application for a warrant.

to the warrant requirement. Article I, section 9, requires that the person granting consent have actual authority. *State v. Lynch*, 94 Or App 168, 171-72, 764 P2d 957 (1988).[2]

Hamilton's affidavit contains the conclusory statement that Arnold "was in control of the [Box] residence." A more artfully drafted affidavit might have articulated *facts* that would establish that Arnold was in control of the house, but "[p]eople often speak in the shorthand of opinions or conclusions, not in the form of a recitation of pure fact." *State v. Lichty*, 313 Or 579, 585, 835 P2d 904 (1992). Hamilton's conclusory statement that Arnold was in control of the residence, taken at face value, is sufficient to establish that Arnold had actual authority to consent to a search. Defendants brought that authority into issue by filing their motions to suppress.

Welty testified at the hearing on their motions. He said that he and two other detectives went to Box's house on September 20, 1990. Richard Arnold, Sr., answered the door. The detectives identified themselves, because they were not wearing uniforms. Welty "asked him at that time whether or not he was in control of the residence because [the detectives] knew that the residence belonged to Roger Box." Welty testified:

> "[Arnold said that] he was watching the place while Roger was in jail; and we knew at that time that Roger Box was in jail. He further indicated that nobody came to the residence — inside the residence without his okay. He then allowed us to search the residence."

Welty's testimony, if believed, is sufficient to establish that Box had granted Arnold actual authority to consent to a search of his house. Defendants offered no evidence to the

---

[2] In *State v. Carsey*, 295 Or 32, 44-46, 664 P2d 1085 (1983), our Supreme Court held that, under the Fourth Amendment, a person who consents to a search must have actual authority to consent. In *State v. Lynch, supra*, we addressed the issue of third-party consent under Article I, section 9. We found *Carsey* to be persuasive, and we held that the Oregon Constitution requires that a person who consents to a search have actual authority to consent. Subsequently, the United States Supreme Court held that the Fourth Amendment does not require actual authority. *Illinois v. Rodriguez*, 497 US 177, 110 S Ct 2793, 111 L Ed 2d 148 (1990). That decision does not change our interpretation of Article I, section 9. We adhere to our conclusion that it requires actual authority.

contrary. The trial court made no finding on Welty's credibility, and he is, therefore, presumed to be truthful. ORS 44.370. The state satisfied its burden of proving that the consent search was lawful.

 In its oral ruling on defendants' motions to suppress, the trial court indicated that Hamilton's affidavit could not have established probable cause to search, even if the earlier consent search had been lawful. We disagree. The affidavit states that, on October 1, 1990, Hamilton spoke with Welty, who said that he and Sergeant Nelson had watched Box's residence for two and a half hours on September 19. During that time,

> "seven (7) separate vehicles came to the residence. Detective Welty described the visitors to the residence as 'short term' meaning only one of the occupants would leave the vehicle, the passenger would walk to the residence and then immediately return to the vehicle and leave. One of the vehicles parked around the corner from the residence and dropped a passenger off, the passenger walked to the residence, and then immediately returned to the waiting vehicle after making contact with an individual at the residence. Based on my training and experience and Detective Welty's training and experience this type of short term traffic is consistent with narcotic sales."

On September 29, 1990, Hamilton spoke with Drennan, who "was currently under arrest [and was] in possession of methamphetamine." Drennan told him that, 18 hours earlier, he had been at Box's house "cutting up" three pounds of methamphetamine with Gunn, Arnold, Metzger and Smokey.

In its order granting defendants' motions to suppress, the trial court concluded:

> "The information provided by the named informant on the 29th of September, 1990, was not adequately corroborated * * *. The information derived from the September 19th surveillance and the September 20th consent search was stale by the time that the named informant provided the additional information on September 29th."

The court correctly recognized that information provided by a named informant who is criminally involved must be corroborated. *State v. Carlile*, 290 Or 161, 168, 619 P2d 1280 (1980). Welty's and Nelson's observations did corroborate Drennan's

statements. The activity that they observed at Box's house on September 19 was consistent with narcotics trafficking. On September 20, Welty saw "paraphernalia and packaging material associated with the sales and use of methamphetamines" in Box's residence. The information gained by surveillance and the consent search was not stale when the magistrate issued the warrant, because Drennan indicated that he had seen three pounds of methamphetamine in Box's house, less than a day earlier. The magistrate was entitled to conclude that evidence of controlled substances would probably still be located in Box's house. The search warrant was valid.

■　　Defendants Gunn, Thomas and Carter argue that, even if the warrant was valid, the trial court's decision should be affirmed, because the officers who conducted the search violated the "knock and announce" rule.[3] We will affirm the judgment of the trial court if it reached the correct result, even if for the wrong reason. Or Const, Art VII, § 3; *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988).[4] Hamilton testified at the suppression hearing that, on October 2, he and five other officers arrived at Box's house with a search team in an unmarked van. They parked the van 20 to 25 feet from the front door. The officers crossed the yard "at a dead run." The front door was open, but the screen door was closed. Hamilton testified: "And from the instant we exited the van, crossed the front yard and entered the front door, we were yelling, 'police, search warrant.' " They did not stop and knock. Instead, they "opened up the screen door [and] entered the house."

■　　ORS 133.575 does not specifically require that officers knock before entering—it requires· that they provide "appropriate notice." The issue is whether running across the lawn while shouting "police, search warrant" is appropriate notice.[5] In *State v. Valentine/Darroch*, 264 Or 54, 60, 504

---

[3] ORS 133.575(2) provides:

"The executing officer shall, before entering the premises [to be searched], give appropriate notice of the identity, authority and purpose of the officer * * * to the person in apparent control of the premises to be searched[.]"

[4] Defendant Phillips did not address the issue in his brief. Defendants Richard Arnold, Sr., and Richard Arnold, Jr., did not file briefs.

[5] Hamilton did not testify that the police anticipated that this particular search might be dangerous or that the occupants might destroy evidence or attempt to

P2d 84 (1972), *cert den* 412 US 948 (1973), the Supreme Court recognized that the "knock and announce" rule encompasses a privacy interest:

> "It must be remembered that the police officers have the right to enter after they announce their presence and purpose and, *if entry is denied, they have the right to force entry.* The only right of privacy protected by the announcement requirement is the right to know who is entering, why he is entering, and *a few seconds to prepare for his entry.*" 264 Or at 60. (Emphasis supplied.)

In *State v. Bost,* 114 Or App 519, 837 P2d 536 (1992), the defendants were brothers. One lived in a house with their mother. The other lived in a trailer behind the house. The officers arrived and parked 7 to 10 feet from the front door. As they ran toward the door, they could see one of the defendants and his mother sitting at the kitchen table. The defendant and his mother looked at the officers, who announced their identity and that they had a search warrant. As the mother reached for the door knob, the officers kicked in the door, breaking her thumb in the process. The other defendant and a friend were sleeping in the trailer. The police kicked in the trailer door after announcing their presence. We affirmed the trial court's conclusion that the officers "did not allow adequate time for [the] defendants to respond." We reasoned: "If the officers may only break in if necessary, after making their announcement, something more than announcing is required." 114 Or App at 524. *See also United States v. Johnson,* 643 F Supp 1465, 1471 (D Or), *aff'd* 822 F2d 62 (9th Cir 1986).

Here, the trial court concluded that the officers did not violate the "knock and announce" rule. In its oral ruling, the court explained:

> "The purpose of the knock and announce rule is a requirement that officers announce their presence, their purpose,

---

escape if the officers stopped to knock. Accordingly, the officers executing the warrant were required to comply with ORS 133.575(2). *State v. Ford,* 310 Or 623, 637, 801 P2d 754 (1990); *State v. Arce,* 83 Or App 185, 188, 730 P2d 1260 (1986), *rev den* 303 Or 322 (1987). In *Arce,* we observed that the "knock and announce" statute does not expressly articulate any exceptions and concluded that the magistrate therefore had no authority to issue a warrant containing an exception. However, *Ford* indicates that the three common law exceptions to the rule may be invoked by officers executing a warrant. 310 Or at 637 n 21.

and their intent of entry. And I think that the evidence as I viewed it establishes that that was done. So I find no violation of [the rule]."

That ruling reveals that the court did not consider whether the occupants of Box's house had "a few seconds to prepare" for the officers' entry, and there is no evidence indicating that the officers paused, even momentarily, before entering. *Compare State v. Stalbert*, 99 Or App 582, 783 P2d 1005 (1989) (no violation of ORS 133.575(2) when officers paused "no more than two seconds" between knocking and breaking through the door). Hamilton and his search team violated ORS 133.575(2), because they gave the occupants no time at all to prepare for their entry.

 Nonetheless, the evidence seized during the search is subject to suppression only if the violation of ORS 133.575(2) was "aggravated." *Cf. State v. Bishop*, 288 Or 349, 605 P2d 642 (1979) (knock and announce rule for executing an arrest); *State v. Arce, supra* n 5, 83 Or App at 189 n 4. The legislature intended ORS 133.575(2) to codify the requirements of the Fourth Amendment. Therefore, a violation of the statute must rise to constitutional proportions before it will require suppression. *State v. Valentine/Darroch, supra*, 264 Or at 66-69; *State v. Schultz*, 109 Or App 407, 409-10, 819 P2d 762 (1991), *rev den* 313 Or 211 (1992); *State v. Tweed*, 62 Or App 711, 716, 663 P2d 38 (1983).[6]

We have held that violations of ORS 133.575(2) were aggravated and required suppression in only three cases: *State v. Bost, supra*; *State v. Ford*, 99 Or App 1, 780 P2d 1192 (1989), *rev'd* 310 Or 623, 801 P2d 754 (1990); *State v. Tweed, supra*. In *Tweed*, three plainclothes officers had consumed a six-pack of beer before executing a warrant at 12:15 A.M. They were joined by five other officers, only one of whom wore a uniform. One of the plainclothes officers knocked on the door. When the defendant opened the door slightly, the officer stepped in, flashed his badge, pulled an automatic weapon from underneath his coat and pointed it at the defendant. The gun was shaking and the officer smelled of alcohol. Both of the

---

[6] The constitutional "knock and announce" rule is intended to "protect persons who might be injured by violent resistance to unannounced entries and to protect the householder's right to privacy." *State v. Schultz, supra*, 109 Or App at 409. Suppression is required if both of those interests are violated.

occupants testified that they thought they were being robbed. In *Bost, supra,* the defendants' mother was reaching for the door knob when the officers kicked in the door and broke her thumb.

■ None of the aggravating circumstances that were present in *Tweed* or *Bost,* occurred here.[7] The officers arrived around 11:30 in the morning. They were not wearing uniforms, but they were wearing flak jackets with either "sheriff" or "police" printed in large letters. The front door was open, and the occupants could see the officers approaching. The officers opened the screen door. They did not kick or break anything. No one was injured. Nobody was in bed when the police entered. The officers were not intoxicated. They had their guns drawn, but that alone is not sufficient to invalidate a search pursuant to a lawful warrant. *See State v. Berardinelli,* 95 Or App 364, 769 P2d 235, *rev den* 308 Or 79 (1989). The violation of ORS 133.575(2) does not require suppression.

Reversed and remanded.

---

[7] *State v. Ford, supra,* provides no guidance, because the Supreme Court held that the officers reasonably apprehended peril and were therefore excused from complying with ORS 133.575(2). 310 Or at 638-39.