Argued and submitted August 16, 2002, reversed and remanded March 6, 2003

# STATE OF OREGON,
*Appellant,*

*v.*

# DERYL B. CONNELL,
*Respondent.*

## 01C-41831; A115442

64 P3d 579

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Kevin T. Lafky argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

The state appeals from a pretrial order suppressing evidence obtained by a police officer as a result of a traffic stop. The trial court suppressed the evidence on the ground that the officer did not have a reasonable basis to believe that defendant had committed the offense for which the officer made the stop. The state contends that the trial court erred because the officer reasonably suspected that defendant had committed the crime of driving while under the influence of intoxicants. ORS 813.010. We reverse and remand.

The material facts are largely undisputed. At approximately 8:35 p.m. on January 28, 2001, Silverton Police Officer Blaylock saw defendant's car traveling 38 miles per hour in a 30-mile-per-hour zone. Blaylock did not stop defendant, however, because that was not an infraction for which he usually stopped people. Several minutes after seeing defendant speeding, Blaylock again noticed defendant's car, which was parked in a parking lot with its headlights off. As he passed the car, Blaylock saw that defendant was talking on a cell phone.

At 8:45 p.m., Blaylock encountered defendant's car for a third time. Blaylock saw it turn left from South James Street onto Hazelgreen Road in Silverton. After the car completed the turn, Blaylock noticed that it drifted to the left and crossed the center line by a foot and continued traveling that way for approximately 20 feet before crossing back over the line. The officer again decided not to stop defendant but instead followed him to see if he would commit any more infractions. Blaylock followed about two car-lengths behind defendant as he headed west out of town on Hazelgreen Road. After driving several blocks, defendant turned into a residential driveway and shut off his headlights. Blaylock continued past defendant without stopping.

Blaylock ran a DMV check on defendant's car and learned that it was registered at a Woodburn address. Blaylock knew from his training and experience that an intoxicated driver who feels that he or she is being followed by the police often will make frequent stops in an attempt to avoid them. Blaylock believed that defendant was exhibiting

a similar pattern of behavior. First, after he saw defendant speeding—and presumably after defendant saw Blaylock—defendant stopped in a parking lot. Then, while he followed closely behind defendant, defendant pulled into a residential driveway that was not the car's registered address. That behavior, coupled with defendant's earlier erratic driving, persuaded Blaylock that defendant was probably intoxicated. The officer therefore drove to the intersection of Mount Angel Highway and Hazelgreen Road to wait for defendant to continue out of town on Hazelgreen Road. Blaylock waited until approximately 8:53 p.m., at which point he headed back into Silverton on Hazelgreen Road. As he approached Silverton, Blaylock passed defendant going in the opposite direction. He turned around to follow defendant, but, before he could catch up, defendant turned onto Mount Angel Highway and into another residential driveway.

As Blaylock turned into the same driveway, he saw defendant kneeling by the front gate of the house. The officer continued into the driveway, and defendant ran up to the house and opened the front door. Before entering the house, however, defendant looked back at Blaylock. Blaylock shined his spotlight on defendant and told him to stop, but defendant proceeded into the house. After Blaylock turned on the overhead lights on his car and notified the dispatcher of his position, another man came out of the front door of the house and identified himself as Davidson, the owner of the house. Blaylock told him that he needed to speak with defendant. Davidson went into the house and spoke with defendant, and defendant eventually came out and talked with Blaylock.

During the conversation with defendant, Blaylock noticed that defendant's eyes were bloodshot and glassy and that he smelled strongly of alcohol. The officer asked defendant how much he had had to drink that night and whether defendant could still feel the effects of the alcohol. Defendant responded that he had had three to four beers and that he felt a little "buzzed." Blaylock then asked him to perform some field sobriety tests. Defendant performed poorly on several of the tests, and Blaylock arrested him for driving while under the influence of intoxicants.

Defendant moved to suppress all of the evidence obtained as a result of the stop. At the hearing on the motion, the state argued that there were two sources of authority for the stop. First, Blaylock had authority under ORS 810.410 to stop defendant because he had watched defendant commit two traffic infractions. The state argued that, although Blaylock did not immediately stop defendant for the infractions, there is no time limit for making such a stop. Next, the state argued that Blaylock had authority under ORS 131.615(1) to stop defendant because, based on the traffic infractions and defendant's suspicious behavior, the officer reasonably suspected that defendant had committed the crime of driving while under the influence of intoxicants.

In response, defendant pointed to discrepancies between Blaylock's testimony at the suppression hearing and his testimony at a prior administrative hearing involving the same offense. Defendant argued that Blaylock's testimony at the suppression hearing that he had stopped defendant for the traffic infractions was not credible because he had testified in the administrative hearing that he had stopped defendant because of defendant's suspicious behavior. Hence, defendant argued, the only justification for the stop that the trial court should consider in assessing whether Blaylock lawfully stopped defendant was defendant's suspicious behavior and that, according to defendant, was not sufficient to justify the stop.

The court granted defendant's motion. The court rejected the state's assertion that Blaylock had stopped defendant for the traffic infractions. It concluded that the length of time between the traffic infractions and the stop did not support the state's assertion—or Blaylock's testimony—that the officer had stopped defendant for the infractions. Instead, it found that Blaylock had stopped defendant based on his suspicious behavior. In assessing that behavior, the court concluded that it did not create an objectively reasonable basis to stop defendant for driving while under the influence of intoxicants:

"The fact that the defendant pulled over and stopped on two separate occasions, at a relatively early hour in the evening, is simply not evidence of anything, in my opinion. At

the time of the 'stop' of this defendant, there existed no legal basis to support it."

On appeal, the state argues that the trial court erred in granting the motion to suppress because it failed to consider the totality of the circumstances in assessing whether the officer had a reasonable basis to suspect that defendant was driving while under the influence of intoxicants. Defendant counters that the trial court did not err because the officer's conflicting testimony supports neither the subjective nor the objective prong of the reasonable suspicion test.

An officer may stop a person to conduct a reasonable inquiry if the officer "reasonably suspects" that the person has committed a crime. ORS 131.615(1). An officer "reasonably suspects" that a person has committed a crime if the officer "holds a belief that is reasonable under the totality of the circumstances existing at the time and place" of the stop. ORS 131.605(5). The officer must subjectively believe that the person has committed a crime and that subjective belief must be objectively reasonable. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997).

Here, the trial court found that Blaylock did not stop defendant for the traffic infractions. The court instead found that Blaylock stopped defendant because defendant was "avoiding" him and acting in a suspicious manner, which led Blaylock to suspect that defendant was driving while under the influence of intoxicants. We are bound by those findings on appeal because there is evidence in the record to support them. *State v. Bost*, 317 Or 538, 541, 857 P2d 132 (1993). We therefore turn to whether Blaylock's subjective belief that defendant had committed the crime of driving while under the influence of intoxicants was objectively reasonable under the totality of the circumstances.

We first address defendant's contention that the traffic infractions should not be considered to be part of the circumstances that led Blaylock to stop defendant. According to defendant, because the "infractions were not the reason for the stop[,] the court does not consider them under the totality of the circumstances." Defendant's premise is incorrect. The trial court's conclusion that Blaylock did not stop defendant for the traffic infractions does not mean that the infractions

played no part in Blaylock's decision to make the stop. The state asserted in its memorandum on the suppression motion that the traffic infractions and the suspicious behavior constituted the facts on which Blaylock relied to make the stop. The court said in its letter opinion that it accepted the facts stated in both parties' memoranda. Consequently, the infractions are part of the circumstances that bear on whether Blaylock's belief that defendant was driving while under the influence of intoxicants was objectively reasonable. *See, e.g.*, *Belt*, 325 Or at 11-12.

We turn to the circumstances of the stop. Blaylock first saw defendant speeding. Five minutes later, he saw defendant parked in a lot with his headlights turned off. Five minutes after that, when Blaylock saw defendant for a third time, defendant turned left onto Hazelgreen Road, crossed over the center line by a foot, and drove that way for another 20 feet. The officer then followed defendant, but, after a short time, defendant drove into a residential driveway and turned his headlights off. Blaylock knew that the residence was not the registered address for defendant's car. He also knew, from training and experience, that intoxicated drivers will often use "stop and go" tactics to avoid the police. Several minutes later, Blaylock again encountered defendant traveling on the same road and in the same direction as before, which supported Blaylock's theory that defendant was employing "stop and go" tactics to avoid him. Before Blaylock could catch up with defendant, defendant had again turned into a residential driveway that was not the car's registered address. As Blaylock pulled into the driveway, he saw defendant kneeling by the front gate of the house. Defendant then ran to the front door of the house and opened it. We conclude that the combination of questionable driving and attempts to avoid the officer's attention gave Blaylock an objectively reasonable basis to stop defendant for driving while under the influence of intoxicants. The trial court erred in concluding otherwise.

Reversed and remanded.